1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  JESSE WASHINGTON,

11          Plaintiff,                    No. CIV S-06-1994 WBS DAD P

12       vs.

13  J. BROWN, et al.,                     ORDER AND

14          Defendants.                   FINDINGS AND RECOMMENDATIONS

15  _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17  relief under 42 U.S.C. § 1983.  The matter is before the court on a motion for summary judgment

18  pursuant to Rule 56 of the Federal Rules of Civil Procedure brought on behalf of defendants

19  Brown, Brewer, Kissinger, and Madrigal.  Plaintiff has filed an opposition to the motion, and

20  defendants have filed a reply.

21                          **BACKGROUND**

22          Plaintiff is proceeding on his original complaint.  Therein, he alleges as follows.

23  Prior to the start of Ramadan on October 15, 2004, plaintiff and several of his fellow inmates

24  petitioned defendants Brewer and Kissinger to notify the kitchen staff that they intended to

25  participate in the Ramadan fast.  However, leading up to the fast, defendant Kissinger forced

26  plaintiff to initiate a hunger protest for five consecutive days by repeatedly contaminating

1

1  plaintiff's food trays.  Defendants Brewer and Kissinger intentionally failed to ensure that

2  plaintiff and his fellow inmates were placed on the Ramdan fast list and allowed to participate in

3  the Muslim religious observance.  (Compl. at 9-10.)

4        On December 19, 2004, defendants Brown and Madrigal were distributing

5  breakfast food trays in administrative segregation and told plaintiff that they spit in his food.

6  When the defendants reappeared in administrative segregation to retrieve the food trays and to

7  issue inmates sack lunches, plaintiff asked to see the unit officer in charge.  However, the

8  defendants ignored his request and defendant Brown snatched his food tray from the food port.

9  Defendants Brown and Madrigal then slammed plaintiff's right hand in the food port, causing

10 him severe pain through his right hand, arm, and back.  After freeing his hand, plaintiff felt sharp

11 pains in his lower back and asked the defendants to summon emergency medical staff to examine

12 his hand, but they ignored his request.  Defendants Brown and Madrigal then denied plaintiff a

13 sack lunch and when they returned to administrative segregation to serve evening meal trays,

14 defendant Brown told plaintiff that he contaminated his food again.  When the defendants

15 reappeared in administrative segregation to retrieve the evening food trays, they tried to provoke

16 plaintiff into refusing to return his food tray so that they could use pepper spray to extract him

17 from his cell for disobeying a direct order.  (Compl. at 3-8.)

18        Plaintiff claims that defendants Kissinger and Brewer violated his First

19 Amendment right to free exercise by intentionally denying him the opportunity to participate in

20 the Muslim Ramadan fast and refusing to provide him with obligatory make-up Ramadan food

21 trays.  Plaintiff further claims that defendant Kissinger violated his Eighth Amendment right to

22 adequate medical care when he contaminated his food trays thereby interfering with his

23 prescribed medical treatment of taking Ibuprofen for his pre-existing lower back, hip, and knee

24 pain.  Finally, plaintiff claims that defendant Kissinger violated his First Amendment right to be

25 free from retaliation when he contaminated plaintiff's food trays because plaintiff had previously

26 filed administrative grievances against Kissinger.  (Compl. at 10 & 12-13.)

1    Plaintiff also claims that defendants Brown and Madrigal violated his Eighth

2  Amendment right to adequate medical care when they refused to summon emergency medical

3  personnel to treat his hand injury and when they served him contaminated meals and denied him

4  a sack lunch thereby interfering with his prescribed medical treatment of taking Ibuprofen.

5  Plaintiff further claims that defendants Brown and Madrigal violated his Eighth Amendment

6  right to be free from excessive force when they slammed his hand in the food port.  Finally,

7  plaintiff claims that defendants Brown and Madrigal violated his First Amendment right to be

8  free from retaliation when they used excessive force against him and denied him adequate

9  medical care because plaintiff previously filed administrative grievances against them.  (Compl.

10  at 6, 8 & 12.)

11    Plaintiff requests relief in the form of compensatory damages, punitive damages,

12  declaratory relief, and any other relief the court deems appropriate.  (Compl. at 3.)

13    **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

14    Summary judgment is appropriate when it is demonstrated that there exists "no

15  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

16  matter of law."  Fed. R. Civ. P. 56(c).

17    Under summary judgment practice, the moving party
      always bears the initial responsibility of informing the district court
18    of the basis for its motion, and identifying those portions of "the
      pleadings, depositions, answers to interrogatories, and admissions
19    on file, together with the affidavits, if any," which it believes
      demonstrate the absence of a genuine issue of material fact.
20

21  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

22  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

23  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

24  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

25  after adequate time for discovery and upon motion, against a party who fails to make a showing

26  sufficient to establish the existence of an element essential to that party's case, and on which that

3

1  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

2  concerning an essential element of the nonmoving party's case necessarily renders all other facts

3  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

4  whatever is before the district court demonstrates that the standard for entry of summary

5  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

6          If the moving party meets its initial responsibility, the burden then shifts to the

7  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

8  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

9  establish the existence of this factual dispute, the opposing party may not rely upon the

10  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11  form of affidavits, and/or admissible discovery material, in support of its contention that the

12  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

13  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

14  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

15  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

16  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

17  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

18  1436 (9th Cir. 1987).

19          In the endeavor to establish the existence of a factual dispute, the opposing party

20  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

23  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

25  committee's note on 1963 amendments).

26  /////

1    In resolving the summary judgment motion, the court examines the pleadings,
2 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
3 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
4 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
5 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
6 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
7 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
8 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
9 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
10 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
11 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
12 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
13    On October 31, 2006, the court advised plaintiff of the requirements for opposing
14 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
15 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).
16    **OTHER APPLICABLE LEGAL STANDARDS**
17 I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983
18    The Civil Rights Act under which this action was filed provides as follows:
19    Every person who, under color of [state law] . . . subjects, or causes
20    to be subjected, any citizen of the United States . . . to the
deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
21    law, suit in equity, or other proper proceeding for redress.
22 42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the
23 actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See
24 Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362
25 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the
26 meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

5

1   omits to perform an act which he is legally required to do that causes the deprivation of which

2   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

3           Moreover, supervisory personnel are generally not liable under § 1983 for the

4   actions of their employees under a theory of respondeat superior and, therefore, when a named

5   defendant holds a supervisorial position, the causal link between him and the claimed

6   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

7   (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

8   allegations concerning the involvement of official personnel in civil rights violations are not

9   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

10   II.  Eighth Amendment and Excessive Force

11           The Eighth Amendment prohibits the infliction of "cruel and unusual

12   punishments."  U.S. Const. amend. VIII.  It is well established that the "unnecessary and wanton

13   infliction of pain" constitutes cruel and unusual punishment prohibited by the United States

14   Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430

15   U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor

16   negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not

17   inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

18   Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

19           What is needed to show unnecessary and wanton infliction of pain "varies

20   according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.

21   1, 5 (1992) (citing Whitley, 475 U.S. at 320).  The plaintiff must show that objectively he

22   suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable

23   state of mind in allowing or causing the plaintiff's deprivation to occur.  Wilson v. Seiter, 501

24   U.S. 294, 298-99 (1991).

25           "The objective component of an Eighth Amendment claim is . . . contextual and

26   responsive to 'contemporary standards of decency.'"  Hudson, 503 U.S. at 8 (quoting Estelle, 429

1   U.S. at 103).  The objective prong of the test requires the court to consider whether the alleged

2   wrongdoing was harmful enough to establish a constitutional violation.  Hudson, 503 U.S. at 8;

3   Wilson, 501 U.S. at 298.  In the context of an excessive use of force claim, however, the

4   objective prong does not require a prisoner to show a "significant injury" in order to establish

5   that he suffered a sufficiently serious constitutional deprivation.  Hudson, 503 U.S. at 9-10.

6              The subjective prong of the two-part test is also contextual.  Wilson, 501 U.S. at

7   299.  A prison official acts with the requisite "culpable mind" with respect to an excessive use of

8   force claim if he acts maliciously and sadistically for the purpose of causing harm.  Whitley, 475

9   U.S. at 320-21.  "[W]henever prison officials stand accused of using excessive physical force in

10  violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in

11  Whitley, i.e.,  whether force was applied in a good-faith effort to maintain or restore discipline,

12  or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.

13  III.  Eighth Amendment and Inadequate Medical Care

14             Where a prisoner's Eighth Amendment claims arise in the context of medical

15  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

16  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

17  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

18  and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

19  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

20  (9th Cir. 1997) (en banc).

21             A medical need is serious "if the failure to treat the prisoner's condition could

22  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

23  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

24  need include "the presence of a medical condition that significantly affects an individual's daily

25  activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

26  /////

7

1    satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

2    Brennan, 511 U.S. 825, 834 (1994).

3            If a prisoner establishes the existence of a serious medical need, he must then

4    show that prison officials responded to the serious medical need with deliberate indifference.

5    Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

6    deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

7    which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

8    (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

9    to medical care, however, "the indifference to his medical needs must be substantial.  Mere

10   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

11   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

12   105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

13   negligence in diagnosing or treating a medical condition, without more, does not violate a

14   prisoner's Eighth Amendment rights.");  McGuckin, 974 F.2d at 1059 (same).  Deliberate

15   indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

16   ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

17   (quoting Whitley, 475 U.S. at 319).

18           Delays in providing medical care may manifest deliberate indifference.  Estelle,

19   429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

20   providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

21   1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

22   1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

23   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

24   prisoner need not show his harm was substantial; however, such would provide additional

25   support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

26   v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

8

1          Finally, mere differences of opinion between a prisoner and prison medical staff

2   as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

3   Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

4   Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Or., 662 F.2d 1337, 1344 (9th Cir. 1981).

5   IV.  First Amendment and Retaliation

6          Both the initiation of litigation before the court and the filing of administrative

7   grievances are protected activities, and prison officials may not retaliate against prisoners for

8   engaging in these activities.  See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  As the

9   Ninth Circuit has explained:

10          Within the prison context, a viable claim of First Amendment
            retaliation entails five basic elements: (1) An assertion that a state
11          actor took some adverse action against an inmate (2) because of (3)
            that prisoner's protected conduct, and that such action (4) chilled
12          the inmate's exercise of his First Amendment rights, and (5) the
            action did not reasonably advance a legitimate correctional goal.
13

14   Rhodes, 408 F.3d at 567-68.  See also Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir.

15   2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, literally,

16   "after this, therefore because of this.").

17   V.  First Amendment and Free Exercise

18          "[C]onvicted prisoners do not forfeit all constitutional protections by reason of

19   their conviction and confinement in prison."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).

20   However, a prisoner's First Amendment rights are "necessarily limited by the fact of

21   incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

22   maintain prison security."  McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).  In particular,

23   a prisoner's constitutional right to free exercise of religion must be balanced against the state's

24   right to limit First Amendment freedoms in order to attain valid penological objectives such as

25   rehabilitation of prisoners, deterrence of crime, and preservation of institutional security.  See

26   O'Lone v. Shabazz, 482 U.S. 342, 348 (1987); Pell v. Procunier, 417 U.S. 817, 822-23 (1974).

9

1    These competing interests are balanced by applying a "reasonableness test." McElyea, 833 F.2d

2    at 197. "When a prison regulation impinges on inmates' constitutional rights, the regulation is

3    valid if it is reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley,

4    482 U.S. 78 (1987)).

5            Several factors are relevant to a reasonableness determination: (1) whether the

6    regulation has a valid, rational connection to legitimate governmental interests invoked to justify

7    it; (2) whether there are alternative means of exercising the asserted constitutional right; (3) what

8    impact accommodation of the asserted right will have on correctional staff and other inmates, and

9    on the allocation of prison resources in general; and (4) whether there are ready alternatives to

10   the regulation or policy in question, the absence of which is evidence of the reasonableness of the

11   prison regulation. Turner, 482 U.S. at 89-91.

12           Courts must, of course, accord deference to the decisions of prison administrators.

13   Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977). "Nevertheless,

14   deference does not mean abdication." Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990).

15   Prison officials are not entitled to summary judgment if they fail to provide evidence that the

16   interests they have asserted are the actual bases for the regulation or policy under attack. Id. at

17   386. Prison officials cannot rely on conclusory assertions to support their policies but must first

18   identify the specific penological interests involved and then make an evidentiary showing that

19   those specific interests are the actual bases for their policies and that the policies are reasonably

20   related to the furtherance of the identified interests. Id.

21                        **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

22   I. Defendants' Statement of Undisputed Facts and Evidence

23           Defendants' statement of undisputed facts is supported by citations to the

24   declarations of defendants Brewer, Brown, Kissinger, and Madrigal, as well as to the declarations

25   of Chaplain Mohamed, Nurse Unterreiner, and HDSP Chief Medical Officer Swingle.

26   Defendants' statement of undisputed facts is also supported by citations to plaintiff's complaint,

1    plaintiff's deposition transcript, prison officials' responses to plaintiff's inmate appeals, and

2    other internal prison documents.

3            The evidence submitted by defendants establishes the following.  From October 3,

4    2004, through October 8, 2004, plaintiff was housed in the administrative segregation unit

5    ("ASU"), Facility Z, at High Desert State Prison ("HDSP").  (Exs. F, R, & S.)  In ASU, each

6    inmate or a pair of inmates in some cases, is housed in a separate cell which is surrounded by

7    three solid walls and a door with a window and a food port.  The food port consists of a slot with

8    a hinged front panel and a lock on the outside.  Floor officers unlock and open the food ports to

9    provide inmates with meals and to collect trash from inmates' previous meals.  Only correctional

10   officers can close and lock the food ports.  (Ex. E.)

11           Inmates in ASU are provided meals according to the following schedule.  In the

12   morning, floor officers provide each inmate with a breakfast tray.  Approximately two hours

13   later, floor officers collect each inmate's breakfast trash and deliver the inmate a sack lunch.  In

14   the evening, floor officers collect the lunch trash and deliver the inmate a dinner tray.  (Ex. E.)

15           From September 2004 through October 2004, defendant Kissinger worked as a

16   floor officer in ASU.  From October 3, 2004, through October 8, 2004, defendant Kissinger

17   served breakfast trays to the inmates.  (Exs. D & G.)  Plaintiff believed that defendant Kissinger

18   was contaminating his meals and initiated a hunger protest from October 3, 2004 through

19   October 8, 2004.  (Ex. G.)  On December 5, 2004, plaintiff filed an inmate grievance against

20   defendant Kissinger regarding his right to receive nutritional food trays.  (Compl. at 10.)

21           On October 15, 2004, the Islamic Ramadan fast began.  (Ex. G.)  Adherents to the

22   Ramadan fast celebrate the occasion by fasting during daylight hours (from sunrise to sundown)

23   for an entire lunar month.  (Ex. H.)  Typically, inmates in ASU receive their meals during

24   daylight hours (between sunrise and sundown).  (Ex. E.)  However, special arrangements were

25   made to ensure that Islamic inmates receive food before sunrise and after sundown.  For

26   /////

1   example, each inmate participating in the Ramadan fast receives a sack lunch and dinner tray to

2   consume before sunrise.  (Ex. H.)

3            Inmates who wished to participate in the Ramadan fast in 2004 needed to submit a

4   request for interview with the Islamic Chaplain before the start of Ramadan.  After interviewing

5   the inmates, the Chaplain generated a list of fast participants and submitted it to the central

6   kitchen.  (Ex. E.)  At some point before the start of Ramadan, plaintiff asked defendants

7   Kissinger and Brewer how to participate in the Ramadan fast.  (Compl. at 9 & Ex. G.)  They

8   informed plaintiff of the need to submit a request for interview to the Islamic Chaplain.  (Exs. D,

9   E & G.)  The Chaplain was responsible for ensuring that plaintiff's name was on the Ramadan

10  fast list.  (Exs. E & I.)  On September 15, 2004, the Chaplain created and submitted the list of

11  Ramadan fast participants to the central kitchen.  (Ex. I.)  The Chaplain later discovered that he

12  had inadvertently omitted three inmates from the list, including plaintiff and the list was

13  promptly revised to include the omitted names.  (Exs. J, K & N.)  From November 2, 2004, until

14  the conclusion of the Ramadan fast, plaintiff received appropriate meals, allowing him to

15  participate in the Muslim religious observance.  (Ex. G.)

16            On December 19, 2004, plaintiff was housed in ASU, Facility D.  (Ex. G.)

17  Defendants Brown and Madrigal worked as floor officers and served breakfast trays to the

18  inmates, collected the breakfast trash and provided each inmate with a sack lunch.  (Exs. B, C, &

19  G.)  Plaintiff believed that defendants Brown and Madrigal contaminated his breakfast tray, so he

20  did not eat breakfast.  When the defendants appeared at his cell to collect his tray and trash,

21  plaintiff asked to speak with a sergeant.  The defendants ignored the request, and while plaintiff

22  had his breakfast tray in the food port and used his hands to demonstrate why he believed his tray

23  was contaminated, defendants Brown and Madrigal closed the food port panel on his right hand.[1]

24  /////

25  _____

26      [1]  Solely for purposes of defendants' motion for summary judgment, defendants do not
dispute this portion of plaintiff's version of events.  (Defs.' Mot. for Summ. J. at 4 n.1.)

1   Plaintiff requested defendants Brown and Madrigal summon emergency medical care for him.

2   Plaintiff also requested a sack lunch, which he did not receive.  (Ex. G.)

3           Within minutes, defendants Brown and Madrigal relayed plaintiff's request for

4   medical care to the medical technical assistant on duty.  (Exs. B & C.)  Medical personnel came

5   to plaintiff's cell within two hours and provided him with a sick-call slip so that he could

6   schedule an appointment with a physician.  (Ex. G.)  According to prison policies and

7   procedures, if medical personnel observe an inmate with an obvious injury or medical need,

8   medical personnel must either provide the inmate with the appropriate medical treatment or

9   obtain for the inmate the appropriate medical treatment.  If an inmate claims to have sustained an

10  injury without any observable injuries, medical personnel provide a sick-call slip and instruct the

11  inmate to fill out the slip to receive a full examination by a medical doctor or nurse.  (Ex. L.)

12          On December 19, 2004, defendants Brown and Madrigal also served evening

13  meals to the inmates in ASU.  Plaintiff believed that the defendants contaminated his evening

14  tray, so he did not eat dinner and decided not to take his prescribed Ibuprofen for fear that taking

15  it without a meal would cause him stomach pains.  Plaintiff had been instructed to take Ibuprofen

16  three times a day to treat pain associated with chronic arthritis.  Plaintiff needed to take the

17  Ibuprofen with a meal to avoid potentially experiencing stomach pains.  Defendants Brown and

18  Madrigal were not aware that plaintiff was taking Ibuprofen or that he needed to take Ibuprofen

19  with a meal to avoid experiencing stomach pains.  (Exs. B, C & G.)

20          Defendants Brown and Madrigal's actions on December 19, 2004 were not

21  motivated by plaintiff's filing of an inmate appeal against them.  (Exs. B & C.)  In all of their

22  conversations with plaintiff on December 19, 2004, defendants Brown and Madrigal never

23  mentioned plaintiff's filing of an inmate appeal against them and never stated that their actions

24  were in any way motivated by plaintiff's filing of an inmate appeal against them.  (Ex. G.)

25          By morning on December 20, 2004, plaintiff accepted his meals and took his

26  Ibuprofen as prescribed.  (Ex. G.)  Plaintiff's one-day abstention from taking Ibuprofen did not

1  result in any permanent or ongoing harm to his health and did not expose him to an increased risk

2  of future harm.  (Ex. U.)

3          On December 21, 2004, a registered nurse examined plaintiff, noted no injuries,

4  and referred him to a doctor.  According to prison policies and procedures, if a registered nurse

5  observes any injuries during an examination, the nurse must note it on specific medical forms,

6  which are ultimately placed in the inmate's medical file.  (Ex. L & Attach.)

7          On January 4, 2005, a doctor examined plaintiff and noted that he did not have a

8  fracture to his right hand but did have a previous injury to his small finger and a resolved hand

9  injury.  (Exs. M & O.)

10 II.  Defendants' Arguments

11          Defense counsel argues that the defendants are entitled to summary judgment in

12 their favor because the undisputed facts establish that: (1) plaintiff did not sustain a serious injury

13 when defendants Brown and Madrigal allegedly closed the food port on his hand; (2) plaintiff did

14 not sustain a serious injury as a result of a one-day abstention from taking his prescribed

15 Ibuprofen; (3) there is no causal link between the actions of defendants Brown, Madrigal, and

16 Kissinger and plaintiff's filing of inmate grievances against them; (4) there is no causal link

17 between the actions of defendants Kissinger and Brewer and plaintiff's delayed participation in

18 the Ramadan fast in 2004; and (5) defendants are entitled to qualified immunity.  (Defs.' Mot. for

19 Summ. J. at 1-2.)

20          First, defense counsel argues that there is no evidence that defendants Brown and

21 Madrigal used excessive force against plaintiff.  Counsel contends that in determining whether

22 defendants' use of force was wanton and unnecessary, the court should consider the extent of

23 plaintiff's injury.  Here, counsel argues, plaintiff at most sustained a minor injury during the

24 December 19, 2004 incident.  Counsel notes that medical personnel examined plaintiff two hours

25 after the incident and did not observe any injuries.  In addition, a registered nurse examined

26 plaintiff two days after the incident and did not comment on any injuries.  Finally, defense

1  counsel points out that a doctor examined plaintiff on January 4, 2005, approximately two weeks

2  after the incident, and noted that plaintiff had a resolved hand injury and evidence a previous

3  injury to his small finger.  (Defs.' Mot. for Summ. J. at 7-8.)

4             Second, defense counsel argues that defendants Brown and Madrigal were not

5  deliberately indifferent to plaintiff's medical needs after they allegedly closed the food port on

6  his hand.  As noted above, there is no evidence that plaintiff sustained an injury following the

7  December 19, 2004 incident.  Within two hours of the incident medical personnel saw him and

8  did not find any signs of serious injury requiring urgent medical care.  Rather, medical personnel

9  provided plaintiff with a sick-call slip to schedule a medical appointment and plaintiff did not

10 experience an unreasonable delay in receiving medical treatment.  Defense counsel argues in this

11 regard that being seen within two hours for hand discomfort is a reasonable response time.  In

12 any event, the defendants contend that there is no evidence that the mere two-hour wait for

13 treatment resulted in any harm to plaintiff.  (Defs.' Mot. for Summ. J. at 9-11.)

14            Similarly, defense counsel argues that defendants Brown and Madrigal were not

15 deliberately indifferent to plaintiff's medical needs when they allegedly contaminated his food

16 and interfered with his ability to take his prescribed Ibuprofen because they did not know he

17 needed to take Ibuprofen, nor did they know that he needed to take Ibuprofen with a meal to

18 avoid experiencing stomach pains.  In this regard, counsel contends that at most the defendants

19 were negligent.  Moreover, counsel argues, even if the defendants were aware of plaintiff's

20 medical needs the one-day abstention from Ibuprofen did not result in any serious injury or

21 expose plaintiff to an unreasonable risk of harm.  (Defs.' Mot. for Summ. J. at 12-15.)

22            Third, defense counsel argues that there is no causal link between defendants

23 Brown and Madrigal's alleged slamming of plaintiff's hand in the food port and refusal to

24 summon medical personnel and plaintiff's filing of inmate grievances against them.  Defendants

25 Brown and Madrigal argue that in all of their interaction with plaintiff they never mentioned

26 plaintiff's filing of an inmate appeal against them or stated that their actions were motivated by

1    plaintiff's filing of an inmate appeal.  In this regard, counsel contends that there is no evidence

2    that defendant Brown and Madrigal's alleged conduct was "because of" plaintiff's filing of

3    inmate grievances.  In fact, defendants Brown and Madrigal argue, the evidence before the court

4    establishes that none of their actions were motivated by plaintiff's filing of an inmate appeal

5    against them.  (Defs.' Mot. for Summ. J. at 15-16.)

6          Similarly, defense counsel argues that there no causal link between defendant

7    Kissinger's alleged contamination of plaintiff's food trays and plaintiff's filing of inmate

8    grievances against him.  In fact, according to counsel, plaintiff did not file a grievance against

9    defendant Kissinger until after he allegedly contaminated plaintiff's food trays.  Moreover,

10   counsel notes, defendant Kissinger has affirmatively refuted the notion that he retaliated against

11   plaintiff for any reason.  (Defs.' Mot. for Summ. J. at 15-16.)

12         Fourth, defense counsel argues that there is no causal link between defendants

13   Kissinger and Brewer's actions and plaintiff's delayed participation in the Ramadan fast in 2004.

14   Counsel observes that when plaintiff asked to participate in the fast, defendants Kissinger and

15   Brewer informed him that he needed to submit a request for interview to the Islamic Chaplain

16   and that the Chaplain was responsible for including names on the Ramadan fast list.  Here, the

17   evidence establishes that the Chaplain inadvertently omitted plaintiff's name from the initial list.

18   However, once the error was discovered, the list was promptly revised to include plaintiff and he

19   was able to participate in the remainder of the fast.  (Defs.' Mot. for Summ. J. at 17-19.)

20         Finally, defense counsel argues that his clients are entitled to qualified immunity

21   because they did not violate plaintiff's constitutional rights.  In addition, counsel argues that a

22   reasonable person in defendant Brown or Madrigal's position would have believed their alleged

23   conduct was lawful because within minutes of plaintiff's request for medical care they relayed

24   that request to the medical technical assistant on duty.  Similarly, counsel contends that a

25   reasonable person in the position of defendants Brown, Madrigal or Kissinger would have

26   believed their alleged conduct was not retaliatory because they were unaware that plaintiff had

1    filed any grievances against them.  Likewise, counsel asserts that a reasonable person in the

2    position of defendants Brewer or Kissinger would have believed that their alleged conduct was

3    lawful because they did everything they could as correctional officers to inform plaintiff about

4    how to arrange participation in the Ramadan fast.  (Defs.' Mot. for Summ. J. at 19-22.)

5          Accordingly, defense counsel concludes that the defendants are entitled to

6    summary judgment in their favor on all of plaintiff's claims.  (Defs.' Mot. for Summ. J. at 23.)

7    III.  <u>Plaintiff's Opposition</u>

8          Plaintiff's lengthy opposition to defendants' motion for summary judgment is

9    supported by a statement of disputed facts, a memorandum of points and authorities, and a

10   declaration signed by plaintiff under penalty of perjury.  It is also supported by, among other

11   things, numerous declarations from "material inmate witnesses" who allegedly have first-hand

12   knowledge of plaintiff's constitutional claims, his medical records and prison central files.

13         First, plaintiff argues that defendants Brown and Madrigal violated his right to be

14   free from excessive use of force when they slammed his hand in the food port, trapping it in the

15   port for three to five seconds.  In doing so, plaintiff claims, the defendants acted maliciously and

16   sadistically for the sole purpose of inflicting wanton and unnecessary pain on him.  Plaintiff also

17   claims that the incident resulted in an injury to his right hand, arm, and lower back.  Plaintiff

18   maintains that his injuries were not de minimis, and because he did not receive a full examination

19   by an institutional doctor until January 4, 2005, the extent of his injuries remain disputed.  (Pl.'s

20   Opp'n to Defs.' Mot. for Summ. J. at 6 & 8-14; Pl.'s Decl. at 2 & 6-8.)

21         Second, plaintiff argues that defendants Brown and Madrigal violated his Eighth

22   Amendment right to adequate medical care because they ignored his plea for medical treatment

23   after they slammed his hand in the food port.  Plaintiff also argues that defendants Brown and

24   Madrigal contaminated his breakfast and dinner and denied him a sack lunch, thereby interfering

25   with his ability to take his prescribed pain medication for chronic arthritis.  Plaintiff contends that

26   he informed the defendants that he needed to take his medication with food to avoid stomach

1    pains but they ignored him and forced him to endure pain for 24 hours until December 20, 2004,

2    when he was able to take Ibuprofen with food.  Plaintiff also argues that defendant Kissinger

3    similarly contaminated his food trays and forced him to initiate a hunger protest from October 3,

4    2004, to October 8, 2004, thereby interfering with his ability to take his prescribed pain

5    medication.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 6-7 & 15-21; Pl.'s Decl. at 3 & 7-10.)

6         Third, plaintiff argues that defendants Brown, Madrigal, and Kissinger violated

7    his First Amendment right to be free from retaliation.  Specifically, defendant Kissinger

8    contaminated plaintiff's food trays because he filed grievances against Kissinger on June 12,

9    2004 for excessive use of force and June 30, 2004 for a violation of plaintiff's First Amendment

10   rights.  Plaintiff contends that defendant Kissinger's actions did not advance any legitimate

11   penological interests.  In addition, plaintiff argues that defendants Brown and Madrigal slammed

12   his hand in the food port, denied him adequate medical care and interfered with his ability to take

13   Ibuprofen by contaminating his meals because plaintiff had filed grievances against them related

14   to personal property and their use of derogatory names when referring to him.  Plaintiff

15   summarily argues that "[s]ince defendants [Brown and Madrigal] admit that plaintiff did not

16   refuses [sic] any direct orders nor violated any institutional rules, their action on 12-19-04 were

17   related to plaintiff's previous filed grievance. . . ."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 5-

18   6 & 22-25; Pl.'s Decl. at 3 & 13-14.)

19        Fourth, plaintiff argues that defendants Brewer and Kissinger violated his First

20   Amendment right to freely exercise his religion when they failed to timely place his name on the

21   Ramadan fast list in 2004.  Plaintiff claims that he participated in the Ramadan fast in 2002 and

22   2003, and that since 2002 custodial officers have been in charge of the sign-up sheet for the fast.

23   Plaintiff argues that the defendants assured him that they would provide inmates in

24   administrative segregation with the sign-up sheet.  Plaintiff also argues that defendant Brewer

25   refused to grant him an additional seventeen make-up days for the days he missed.  (Pl.'s Opp'n

26   to Defs.' Mot. for Summ. J. at 4 & 25-30; Pl.'s Decl. at 3 & 14-18.)

18

1    Finally, plaintiff argues that defendants are not entitled to qualified immunity.

2    Specifically, plaintiff argues that he has established that defendants' conduct violated the First

3    and Eighth Amendments.  In addition, he argues that defendants' actions violated clearly

4    established rights to be free from the excessive use of force and retaliation and to receive

5    adequate medical care.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 31-37.)

6    Accordingly, plaintiff concludes that the court should deny defendants' motion for

7    summary judgment.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 37.)

8    IV.  <u>Defendants' Reply</u>

9    In reply, defense counsel argues that plaintiff failed to timely file and serve his

10   opposition, and the court should therefore disregard it.  Counsel also argues that plaintiff has

11   provided no evidence raising a dispute as to any material facts in this case.  Specifically, counsel

12   argues that defendants Brown and Madrigal did not use excessive force and, at most, plaintiff

13   sustained a de minimis injury.  In addition, counsel contends that plaintiff did not sustain a

14   serious injury during the December 19, 2004 incident and received timely attention from medical

15   personnel.  Also, according to defense counsel, the evidence before the court establishes that

16   neither defendants Brown nor Madrigal were aware that plaintiff needed to take Ibuprofen nor

17   were they aware that plaintiff needed to take the Ibuprofen with food to avoid stomach pains.

18   Counsel argues that although plaintiff claims that his one-day abstention from taking Ibuprofen

19   caused permanent and ongoing harm to his health and exposed him to an unreasonable risk of

20   future harm, plaintiff's only evidence – a letter from Dr. Richard Rosenburg and a transcript from

21   Dr. Rosenburg's deposition in an unrelated case – do not support his contentions.  (Defs.' Reply

22   at 2-5.)

23   Defense counsel also argues that plaintiff has provided no evidence showing that

24   defendants Brown, Madrigal, and Kissinger's alleged actions were taken "because of" plaintiff's

25   engaging in protected activity.  In addition, counsel asserts that there is no causal connection

26   between defendant Brewer and Kissinger's alleged actions and plaintiff's delayed participation in

1    the Ramdan fast in 2004.  Rather, plaintiff's delayed participation in the fast resulted solely from

2    the Islamic Chaplain inadvertent failure to include plaintiff's name on the initial Ramadan fast

3    list.  Finally, defendants reiterate that they are entitled to qualified immunity as to all of

4    plaintiff's claims.  (Defs.' Reply at 5-7.)

5            Accordingly, defense counsel concludes that plaintiff has failed to present

6    evidence raising any triable issue of material fact in this case and that the court should therefore

7    grant defendants' motion for summary judgment.  (Defs.' Reply at 6.)

8                                    **ANALYSIS**

9    I.  Plaintiff's Excessive Force Claims

10           "When prison officials maliciously and sadistically use force to cause harm,

11   contemporary standards of decency always are violated."  Hudson, 503 U.S. at 9.  Here, defense

12   counsel notes that solely for purposes of the pending motion for summary judgment the

13   defendants do not dispute plaintiff's version of the events which occurred on December 19, 2004.

14   (Defs.' Mot. for Summ. J. at 4 n.1.)  Therefore, the court will assume that defendants Brown and

15   Madrigal slammed plaintiff's hand in the food port.  Regardless of the severity of plaintiff's

16   resulting injury, a reasonable jury could conclude that defendants' actions were done maliciously

17   and sadistically to cause harm and inflict pain and not to maintain or restore discipline.  Defense

18   counsel contends that defendants are entitled to summary judgment because plaintiff's injury

19   was, at most, de minimis.  However, the Eighth Amendment standard precludes constitutional

20   recognition only of claims involving a de minimis use of force, not of claims in which a de

21   minimis injury results from the use of excessive force.[2]  See Hudson, 503 U.S. at 9 (a prisoner

22   _____

23           [2]   As noted above, for purposes of this motion the defense has chosen not to dispute
     plaintiff's version of these events.  The court notes that defendants Brown and Madrigal state in
24   their declarations that they never closed a food port shut on an inmate's hand.  Even were the
     motion based on the defendants' version of events, the court finds that a reasonable jury could
25   conclude that defendants' actions violated the Eighth Amendment.  Defendants Brown and
     Madrigal would be entitled to summary judgment if their evidence were uncontroverted, but this
26   is not the case.  Plaintiff has submitted a declaration, signed under penalty of perjury, and has
     testified under oath at his deposition to a very different set of facts.  Plaintiff's sworn statements

                                          20

1    does not need to show "some arbitrary quantity of injury"); Oliver v. Keller, 289 F.3d 623, 628

2    (9th Cir. 2002) (under the Eighth Amendment the inquiry where there is a claim of excessive use

3    of force is on the amount of force used, not the nature or severity of the injury inflicted).

4    Accordingly, defendants Brown and Madrigal are not entitled to summary judgment on plaintiff's

5    excessive use of force claims.[3]

6    II.  Plaintiff's Inadequate Medical Care Claims

7            "The existence of an injury that a reasonable doctor or patient would find

8    important and worthy of comment or treatment; the presence of a medical condition that

9    significantly affects an individual's daily activities; or the existence of chronic and substantial

10   pain are examples of indications that a prisoner has a 'serious' need for medical treatment."

11   McGuckin, 974 F.2d at 1059-60.  Here, plaintiff claims that defendants were deliberately

12   indifferent to his hand injury and his need to take Ibuprofen for his chronic arthritis.  The parties

13   dispute whether plaintiff's hand injury represented a serious medical need but do not dispute that

14   plaintiff's chronic arthritis constitutes a serious medical need nor that plaintiff was taking

15   Ibuprofen for his chronic arthritis at all relevant times.

16           In support of defendants' position that plaintiff did not sustain a serious hand

17   injury or have a serious medical need following the December 19, 2004 incident, defense counsel

18

19   regarding the events of December 19, 2004, if believed, are sufficient to prove his claim of
     excessive use of force.

20       [3]   The Ninth Circuit has repeatedly cautioned lower courts to take care in deciding cases
     involving excessive use of force claims at the summary judgment stage.  In this regard, the court

21   has explained that:

22           Because [the excessive force inquiry] nearly always requires a jury
             to sift through disputed factual contentions, and to draw inferences

23           therefrom, we have held on many occasions that summary
             judgment or judgment as a matter of law in excessive force cases

24           should be granted sparingly.

25   Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  See also Smith v. City of Hemet, 394 F.3d
     689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003).  This

26   case is no different.

                                                  21

has submitted evidence demonstrating that medical personnel came to plaintiff's cell and

provided him with a sick-call slip. (Defs.' Ex. G.)  According to prison policies and procedures,

if medical personnel observe an inmate with an obvious injury or medical need, medical

personnel must either provide him with the appropriate medical treatment or obtain for him the

appropriate medical treatment.  Where as here, an inmate claims to have sustained an injury

without any observable injuries, medical personnel merely instruct the inmate to fill out a sick-

call slip.  In addition, counsel has submitted evidence demonstrating that a registered nurse came

to plaintiff's cell two days after the incident.  According to defense counsel, the nurse did not

observe or comment on any injuries or serious medical needs.  (Defs.' Ex. L & Attach.)  Finally,

defense counsel has submitted evidence demonstrating that a doctor examined plaintiff two

weeks after the incident and noted no fracture to plaintiff's right hand but merely noted a

previous injury to plaintiff's small finger and a resolved hand injury.  (Defs.' Ex. M.)

    In support of his position that he sustained a serious hand injury and had a serious

medical need, plaintiff has submitted a declaration stating that he experienced severe sharp pains

in his right hand, arm, and lower back and that his right hand bled as a result of the incident with

defendants. (Pl.'s Decl. at 7.)  In addition, according to plaintiff's medical records, although the

registered nurse who saw him two days after the incident did not diagnose him with a specific

injury, she recognized that plaintiff's chief complaint was that his knuckles were swollen and that

he had lower-back pain. (Defs.' Ex. L & Attach.)  Finally, as defense counsel recognizes, when

Dr. Rohlfing saw plaintiff two weeks after the incident, he wrote in a progress note that

plaintiff's right hand was jammed in a food port on December 19, 2004 and that the swelling was

down.  Dr. Rohlfing also wrote that there was "evidence of a previous injury to his small finger"

and that plaintiff had a "[r]esolved hand injury."  (Pl.'s Ex. 8.)

    Based on the evidence before the court, including plaintiff's medical records and

observations by HDSP medical personnel, the court finds that plaintiff's hand injury presented a

serious medical need.  The court recognizes that plaintiff did not experience a fracture to his hand

1  and that the hand injury appeared healed within two weeks of the December 19, 2004 incident.

2  Nevertheless, drawing all reasonable inferences from the facts before the court in favor of

3  plaintiff as the party opposing summary judgment, the court cannot conclude that plaintiff did not

4  have a serious medical need.  See, e.g., Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or.

5  1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that

6  may result in pain and suffering which serve no legitimate penological purpose.").

7          Accordingly, resolution of the pending motion for summary judgment with regard

8  to plaintiff's Eighth Amendment inadequate medical care claim hinges on whether defendants

9  Brown and Madrigal responded to plaintiff's hand injury as well as his need to take Ibuprofen for

10  his chronic arthritis with deliberate indifference.  Farmer, 511 U.S. at 834; Estelle, 429 U.S. at

11  106.  The court finds that defendants Brown and Madrigal have borne their initial responsibility

12  of demonstrating that there is no genuine issue of material fact with respect to the adequacy of

13  the medical care provided to plaintiff for his hand injury.  Specifically, defense counsel has

14  submitted evidence demonstrating that within minutes of plaintiff requesting medical care,

15  defendants Brown and Madrigal alerted the medical technical assistant on duty.  Within two

16  hours, medical personnel arrived at plaintiff's cell, and because he did not have any observable

17  injuries, instructed him to fill out a sick-call slip to schedule an appointment with a physician.

18  Defense counsel has submitted evidence demonstrating that two days after the incident a

19  registered nurse examined plaintiff, and approximately two weeks after the incident Dr. Rohlfing

20  examined plaintiff as well.  (Defs.' Exs. B, C, L & M.)

21          The court also finds that defendants Brown and Madrigal have borne the initial

22  responsibility of demonstrating that there is no genuine issue of material fact with respect to the

23  adequacy of the medical care provided to plaintiff for his chronic arthritis.  Specifically, defense

24  counsel has submitted evidence demonstrating that defendants Brown and Madrigal were

25  unaware that plaintiff was taking Ibuprofen or that he needed to take the Ibuprofen with food.

26  (Defs.' Exs. B & C.)  Counsel has also submitted evidence in the form of a declaration from Dr.

1   Swingle, Chief Medical Officer at HDSP.  After reviewing plaintiff's medical files, Dr. Swingle

2   declares that, in his professional opinion, plaintiff's one-day abstention from taking his

3   prescribed Motrin would not result in any permanent or ongoing harm to his health.  At the very

4   most, plaintiff would have experienced some increased pain as a result of missing one day of his

5   Motrin doses, which would have subsided within hours of taking his Motrin the following day.

6   (Defs.' Ex. U.)  Thus, the burden shifts to plaintiff to establish the existence of a genuine issue of

7   material fact precluding summary judgment in defendants' favor.

8           The court has considered plaintiff's opposition to the pending motion for

9   summary judgment as well as his complaint.  Plaintiff has submitted a declaration signed under

10  penalty of perjury as well as a declaration from a fellow-inmate stating that defendants Brown

11  and Madrigal refused to summon emergency medical personnel to examine plaintiff's hand after

12  the December 19, 2004 incident.  The same declarations state that defendants Brown and

13  Madrigal refused to provide plaintiff with a sack lunch even though they were informed that he

14  needed to take his medication with food.  (Pl.'s Decl. at 7-8; Pl.'s Ex. 29 Combs Decl. at 2-3.)

15          Drawing all reasonable inferences from the facts before the court in favor of

16  plaintiff, the undersigned finds plaintiff has failed to submit sufficient evidence to establish a

17  legitimate dispute as to any genuine issue of material fact.  First, there is simply no evidence

18  before the court demonstrating that plaintiff suffered a substantial risk of serious harm as a result

19  of the incident on December 19, 2004.  Toguchi, 391 F.3d at 1057.  According to plaintiff's

20  deposition testimony, six individuals including medical personnel arrived at his cell within two

21  hours of the December 19, 2004 incident and provided him with a sick-call slip to fill out for a

22  future appointment because his hand injury did not require urgent medical care or treatment.

23  (Pl.'s Dep. at 27-28; Defs.' Ex. L.)  According to plaintiff's medical records, he saw a registered

24  nurse and Dr. Rohlfing within two days and two weeks of the incident, respectively.  (Defs.' Exs.

25  L & M.)  Again, plaintiff's hand injury did not require urgent medical care or treatment at those

26  times.  Finally, within two weeks of the December 19, 2004 incident, plaintiff had full range of

1   motion in his hand and his injury had resolved.  (Defs.' Ex. M.)  Although plaintiff may have had

2   a difference of opinion with prison officials regarding the proper medical treatment for his hand

3   injury, such mere differences of opinion do not give rise to a cognizable § 1983 claim.  Jackson,

4   90 F.3d at 332; see also Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006)

5   ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of

6   fact because he has not shown that he has any medical training or expertise upon which to base

7   such an opinion.").

8         Similarly, there is simply no evidence demonstrating that plaintiff suffered a

9   substantial risk of serious harm with respect to his chronic arthritis.  Toguchi, 391 F.3d at 1057.

10  Plaintiff experienced a mere one-day delay in taking his Ibuprofen because defendants allegedly

11  contaminated his food.  Although plaintiff had his medication with him in his cell at all times, he

12  blames defendants for his decision to not to take it for a day.  To the extent that defendants

13  "literally forced" him not to take his pain medication by allegedly serving him contaminated

14  food, the defendants were merely negligent to plaintiff's medical needs.  As noted above,

15  however, defendants' indifference to plaintiff's medical needs must be substantial before the

16  court can conclude that defendants violated his civil rights.  See, e.g., McGuckin, 974 F.2d at

17  1060 ("A finding that the defendant's neglect was an 'isolated occurrence' or an 'isolated

18  exception,' . . . militates against a finding of deliberate indifference").

19        Finally, even if the court believed that the defendants caused a delay in plaintiff's

20  medical treatment for his hand injury or his chronic arthritis, there is no evidence that any such

21  delay ultimately caused plaintiff harm.  See Berry, 39 F.3d at 1057; McGuckin, 974 F.2d at 1059;

22  Wood, 900 F.2d at 1335; Hunt, 865 F.2d at 200; Shapley, 766 F.2d at 407.  For example, there is

23  no evidence that plaintiff's hand injury resulted in an infection or malunion or had any other

24  long-term effect on his ability to use his hand.  Although plaintiff claims that the pain he

25  experiences in his hand has been more intense since the December 19, 2004 incident, he does not

26  attribute the increased pain to the incident with the defendants or any delay in his receiving

1  medical care.  Plaintiff stated in his deposition that "I'm going to not lie and say that was injury."

2  Rather, plaintiff explains that he has had arthritis pain in his hand before, during, and after the

3  December 19, 2004 incident and surmises that the pain become more intense because his arthritis

4  has gotten worse.  (Pl.'s Dep. at 24 ¶ 19-24.)  Finally, as noted above, plaintiff's medical records

5  show that within two weeks of the December 19, 2004 incident, plaintiff had full range of motion

6  in his hand and the injury had resolved.  (Defs.' Ex. M.)

7           Similarly, there is no evidence that plaintiff's delay in taking his Ibuprofen had

8  any lasting effect beyond one day of discomfort.  Plaintiff's one-day abstention from taking his

9  Ibuprofen did not result in any permanent or ongoing harm where his chronic arthritis is

10  concerned.  For example, there is no record that plaintiff needed an increased dosage of Motrin or

11  any additional medical treatment due to any change in his condition.  Plaintiff simply resumed

12  taking his Ibuprofen the following morning.  At most, plaintiff experienced some additional pain

13  that resolved the following day.  Accordingly, defendants Brown and Madrigal are entitled to

14  summary judgment in their favor with respect to plaintiff's inadequate medical care claims.[4]

15  III.  Plaintiff's Retaliation Claims

16           Under the First Amendment, defendants Brown, Madrigal, and Kissinger could

17  not take adverse action against plaintiff because he previously had filed inmate appeals against

18  them.  Rhodes, 408 F.3d 567-68.  On this issue, the court finds that defendants Brown, Madrigal,

19  and Kissinger have borne the initial responsibility of demonstrating that there is no genuine issue

20  of material fact with respect to plaintiff's claim.  Defense counsel has submitted evidence

21  demonstrating that defendants Brown and Madrigal's actions on December 19, 2004, were not

22  motivated by plaintiff's filing of an inmate appeal against them.  (Defs.' Exs. B & C.)  Defense

23

24           [4]  Defense counsel appears to have inadvertently failed to move for summary judgment in
favor of defendant Kissinger on plaintiff's inadequate medical care claim.  Plaintiff claims in his
25  complaint that defendant Kissinger violated his Eighth Amendment right to adequate medical
care when he tampered with plaintiff's food, thereby interfering with his ability to take his
26  prescribed Ibuprofen.  (Compl. at 13.)

1    counsel has also submitted evidence demonstrating that defendant Kissinger never contaminated

2    plaintiff's food and that his actions were not motivated by plaintiff's filing of an inmate appeal

3    against him.  (Defs.' Reply, Ex. A.)  Thus, the burden shifts to plaintiff to establish the existence

4    of a genuine issue of material fact precluding summary judgment in defendants' favor.

5            The court has considered plaintiff's opposition to the pending motion for

6    summary judgment as well as his complaint.  Plaintiff has submitted a declaration in which he

7    maintains that defendants Brown, Madrigal, and Kissinger acted in retaliation for his filing of

8    inmate grievances.  Plaintiff references a number of inmate appeals, letters to the warden, and

9    other complaints he wrote and contends that the defendants were motivated thereby.  (Pl.'s Decl.

10   at 3 & 13-14; Pl.'s Exs. 11-12, 14 & 26.)

11           Drawing all reasonable inferences from the facts before the court in favor of the

12   party opposing summary judgment, the undersigned finds plaintiff has failed to submit sufficient

13   evidence to establish a legitimate dispute as to a genuine issue of material fact.  Plaintiff has

14   failed to demonstrate any causal connection between the defendants' allegedly retaliatory conduct

15   and his filing of inmate grievances.  Nor has plaintiff submitted any evidence showing that his

16   filing of grievances was a "substantial" or "motivating" factor in the defendants' alleged actions.

17   Plaintiff merely assumes that because he previously filed inmate grievances against these

18   defendants they must have acted in retaliation when they slammed his hand in the food port or

19   contaminated his food trays.[5]  Plaintiff, however, assumes too much.  Although timing can be

20   considered as circumstantial evidence of retaliatory intent, it not sufficient in itself to establish a

21   legitimate dispute as to a genuine issue of material fact in this case.  See, e.g., Pratt v. Rowland,

22   65 F.3d 802, 808-809 (9th Cir. 1995).  As noted above, a retaliation claim cannot rest on the

23   logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this."  See

24   Huskey, 204 F.3d at 899; Fed. R. Civ. P. 56(e) (to establish a factual dispute the opposing party

25

26           [5]  Even this erroneous reasoning would not apply to defendant Kissinger who was not the subject of any grievance filed by plaintiff until after the retaliatory act he allegedly engaged in.

1    may not rely upon the allegations of its pleadings but is required to tender evidence of specific

2    facts in support of the contention that the dispute exists).  Accordingly, defendants Brown,

3    Madrigal, and Kissinger are entitled to summary judgment in their favor with respect to

4    plaintiff's retaliation claims.

5    IV.  Plaintiff's Free Exercise Claims

6              "Inmates [] have the right to be provided with food sufficient to sustain them in

7    good health that satisfies the dietary laws of their religion."  McElyea, 833 F.2d at 198.  In this

8    case, the parties do not dispute the sincerity of plaintiff's religious beliefs nor do they contest that

9    practicing Muslims must abstain from all food and drink during the daylight hours for the entire

10   month of Ramadan.  In addition, the parties do not dispute that plaintiff's name was not on the

11   initial Ramadan fast list in 2004.

12             The court finds that defendants Brewer and Kissinger have borne their initial

13   responsibility of demonstrating that there is no genuine issue of material fact with respect to

14   plaintiff's free exercise of religion claim.  In this regard, defense counsel has submitted evidence

15   demonstrating that, as correctional officers defendants Brewer and Kissinger did not engage in

16   any affirmative act nor did they fail to perform a legally-required duty resulting in plaintiff's

17   delayed participation in the Ramadan fast. The evidence before the court establishes that inmates

18   who wished to participate in the Ramadan fast in 2004 were required to submit a request for

19   interview with the Islamic Chaplain before the start of Ramadan and that it was the Chaplain who

20   was responsible for ensuring that plaintiff's name was on the fast list.  (Defs.' Exs. E & I.)  On

21   September 15, 2004, the Chaplain created and submitted the list of Ramadan fast participants to

22   the central kitchen and when he later discovered that the list omitted three inmates, including

23   plaintiff, the list was revised.  (Defs.' Exs. I, J, K & N.)

24             The court has considered plaintiff's opposition to the pending motion for

25   summary judgment as well as his complaint.  Plaintiff has submitted a declaration stating that he

26   has never in the past signed up for Ramdan fasts through the Chaplain or any other religious

1   representatives.  He declares that since his arrival at HDSP in 2002, he has signed-up for the

2   Ramadan fast through unit officers.  (Pl.'s Decl. at 3 & 14-18 & Pl.'s Ex. 20.)  Plaintiff also

3   declares that defendants Brewer and Kissinger assured him that they would provide inmates in

4   administrative segregation with the Ramadan fast sign-up sheet.  (Pl.'s Decl. at 14-18.)

5             Drawing all reasonable inferences from the facts before the court in favor of

6   plaintiff, the court finds that a reasonable jury could conclude that defendants' actions

7   substantially burdened plaintiff's right to freely exercise his religion.  Both parties agree that

8   before the start of Ramdan in 2004, plaintiff asked defendants Brewer and Kissinger how he

9   should arrange to participate in the Ramadan fast.  The parties dispute, however, whether the

10  defendants, in addition to informing plaintiff that he needed to submit a request to the Islamic

11  Chaplain, also told him that they would ensure that his name was on the fast list.  If defendants

12  assured plaintiff that they would place his name on the list so he could participate in the

13  Ramadan fast but then negligently or intentionally failed to do so, their actions would have

14  resulted in plaintiff's delayed participation in the religious fast.

15            Defendants Brewer and Kissinger suggest in their declarations that Chaplain

16  Mohammed had exclusive control over whether an inmate was included on the Ramadan fast list.

17  (Defs.' Exs. D & E.)  However, in support of defendants' motion defense counsel has submitted

18  a declaration from D. Peddicord, a Correctional Lieutenant in ASU.  Lieutenant Peddicord

19  declares that on November 3, 2004, he (and not Chaplain Mohamed) generated the revised

20  Ramadan fast list for ASU inmates.  (Defs.' Exs. K & N.)  In this regard, Lt. Peddicord's

21  declaration suggests that correctional officers had at the very least some control over ASU

22  inmates' ability to participate in the Ramdan fast in 2004.  Under these circumstances, the court

23  finds that defendants Brewer and Kissinger's involvement, if any, in plaintiff's delayed

24  participation in the Ramadan fast remains disputed and a triable issue of material fact.  See, e.g.,

25  McDaniels v. Suss, No. C07-5221 RBL, 2008 WL 859859 at *8 (W.D. Wash. Mar. 28, 2008)

26  (issues of material fact precluding summary judgment on a free exercise claim found where it

1  was disputed whether plaintiff properly alerted chaplain that he wished to participate in Ramadan

2  and whether chaplain intentionally or negligently failed to place plaintiff's name on Ramadan

3  list).  Accordingly, defendants Brewer and Kissinger are not entitled to summary judgment on

4  plaintiff's free exercise of religion claim.

5  V.  Qualified Immunity

6          As set forth above, it has been determined that defendants are entitled to summary

7  judgment with respect to plaintiff's inadequate medical care claims and retaliation claims.

8  Accordingly, the undersigned will only address defendants' qualified immunity arguments with

9  respect to plaintiff's excessive use of force and free exercise claims.

10          "Government officials enjoy qualified immunity from civil damages unless their

11  conduct violates 'clearly established statutory or constitutional rights of which a reasonable

12  person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

13  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The threshold question for a court where a

14  qualified immunity defense is presented is whether the facts alleged, taken in the light most

15  favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or

16  constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no such right would have

17  been violated even if the plaintiff's allegations were established, "there is no necessity for further

18  inquiries concerning qualified immunity."  Id.

19          If a violation of a statutory or constitutional right is demonstrated by the plaintiff's

20  allegations, the next inquiry is "whether the right was clearly established."  Id.  This inquiry must

21  be undertaken in light of the specific context of the case.  Id.  In deciding whether the plaintiff's

22  rights were clearly established, "[t]he proper inquiry focuses on whether 'it would be clear to a

23  reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether

24  the state of the law in [the relevant year] gave 'fair warning' to the officials that their conduct

25  was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier,

26  533 U.S. at 202).  Summary judgment in favor of defendants based on qualified immunity is

1   appropriate if the law did not put the defendants on notice that their conduct would be unlawful.

2   <u>Saucier</u>, 533 U.S. at 202.  Because qualified immunity is an affirmative defense, the burden of

3   proof initially lies with the official asserting the defense.  <u>Harlow</u>, 457 U.S. at 812; <u>Houghton v.</u>

4   <u>South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992); <u>Benigni v. City of Hemet</u>, 879 F.2d 473, 479 (9th

5   Cir. 1989).

6           For the reasons discussed above, the facts alleged in this case, taken in the light

7   most favorable to plaintiff, are sufficient if proven to demonstrate that his rights under the First

8   and Eighth Amendments were violated.  Moreover, the state of the law in 2004 clearly would

9   have given defendants Brown, Madrigal, Brewer, and Kissinger fair warning that their conduct

10  was unconstitutional.  As the United States Supreme Court has recognized:

11          [G]eneral statements of the law are not inherently incapable of
            giving fair and clear warning, and in other instances a general
12          constitutional rule already identified in the decisional law may
            apply with obvious clarity to the specific conduct in question, even
13          though "the very action in question has [not] previously been held
            unlawful."

14

15  <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635,

16  640 (1987)).

17          In the Eighth Amendment context, it was well established in 2004 that "whenever

18  prison officials stand accused of using excessive physical force in violation of the Cruel and

19  Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>, i.e.,  whether

20  force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

21  sadistically to cause harm."  <u>Hudson</u>, 503 U.S. at 6-7.  In this regard, defendants Brown and

22  Madrigal should have been aware that they could not intentionally slam an inmate's hand in a

23  food port.  Likewise, in the First Amendment context, it was well established in 2004 that prison

24  officials' restrictions on an inmate's right to freely exercise his religion are only valid if they are

25  "reasonably related to legitimate penological interests."  <u>Turner</u>, 482 U.S. at 89.  In this regard,

26  defendants Brewer and Kissinger should have been aware that they could not deny an inmate the

31

1  ability to participate in the Ramadan fast if he took the necessary steps to inform prison officials

2  that he adhered to the Muslim faith and wished to participate in the religious observance.

3  Accordingly, defendants are not entitled to summary judgment in their favor with respect to their

4  affirmative defense of qualified immunity.

5  **OTHER MATTERS**

6  Also pending before the court is plaintiff's second motion for leave to file an

7  amended complaint.  On June 19, 2008, the undersigned denied plaintiff's first motion for leave

8  to file an amended complaint because his proposed amended complaint contained allegations that

9  were so vague and conclusory that the court was unable to determine whether they were frivolous

10  or failed to state a claim for relief.  In his pending motion, plaintiff claims that he has addressed

11  the court's concerns and asks for leave to amend to proceed against Chaplain Mohmed,

12  previously referred to as John Doe in his original complaint, on claims brought under the First

13  Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

14  Defendants have filed an opposition to the motion, arguing that they would be

15  substantially prejudiced if plaintiff is allowed to proceed on an amended complaint because they

16  would have to engage in further discovery, including an additional depositions, because defense

17  counsel did not address any potential claims against Chaplain Mohamed in plaintiff's first

18  deposition.  Defendants also argue that allowing plaintiff to amend would further delay the

19  resolution of this case and that plaintiff's allegations in his proposed amended complaint are as

20  vague and conclusory as the allegations in his previous proposed amended complaint.

21  In reply, plaintiff argues that he has diligently prosecuted this case and that he

22  sought leave to amend his complaint as soon as he learned the identity of Chaplain Mohamed.

23  Plaintiff also "certifies and stipulates" that he is willing to waive any further discovery

24  proceedings that pertain to Chaplain Mohamed.

25  As the court explained in its previous order, under Rule 15 of the Federal Rules of

26  Civil Procedure, once an answer has been filed, a party may amend a pleading only by leave of

1   court or by written consent of the adverse party.  See Fed. R. Civ. P. 15(a).  A court should grant

2   leave to amend freely when justice so requires.  Id.  The Supreme Court has instructed lower

3   courts to heed carefully the command of Rule 15.  See Foman v. Davis, 371 U.S. 178, 182

4   (1962).  This liberality in granting leave to amend is not dependent on whether the amendment

5   will add new parties.  DCD Programs v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).  Rather, as

6   the Supreme Court has articulated:

7              In the absence of any apparent or declared reason – such as undue
              delay, bad faith or dilatory motive on the part of the movant,
8              repeated failure to cure deficiencies by amendments previously
              allowed, undue prejudice to the opposing party by virtue of
9              allowing the amendment, futility of the amendment, etc. – the
              leave sought should, as the rules require, be "freely given."

10

11  Foman, 371 U.S. at 182.  See also Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999).

12              Here, the court finds that plaintiff's proposed amended complaint appears to state

13  cognizable claims for relief against Chaplain Mohamed under the First Amendment and

14  RLUIPA.  The court also finds that plaintiff's proposed amended complaint appears to state

15  additional cognizable claims against defendants Kissinger and Brewer under RLUIPA.  See 42

16  U.S.C. § 1983 & 28 U.S.C. § 1915A(b).  If the allegations of the complaint are proven, plaintiff

17  has a reasonable opportunity to prevail on the merits of this action.

18              The court has considered defendants' concerns regarding potential prejudice as

19  well as the age of this case.  However, the court does not find that the defendants will be unduly

20  prejudiced by allowing plaintiff leave to amend in this instance.  In due course, the court will

21  issue a further scheduling order that limits the scope of further discovery to plaintiff's claims

22  against Chaplain Mohamed under the First Amendment and RLUIPA and plaintiff's claims

23  against defendants Brewer and Kissinger under RLUIPA.  The court will also allow the parties to

24  file additional dispositive motions if necessitated by the amendment.  Finally, if defendants find

25  any additional discovery requests served by plaintiff to be unduly burdensome, they may move

26  for a protective order.  See Fed. R. Civ. P. 26(c).

1    Also pending before the court is plaintiff's request asking the court to order

2    defense counsel to return to plaintiff his only copy of his opposition to defendants' motion for

3    summary judgment.  Plaintiff claims that he mailed defense counsel a copy of that opposition

4    together with a self-addressed envelope and instructions to return it to him after counsel made a

5    copy for himself.  Plaintiff is advised he is responsible for making copies of any documents he

6    wants to retain for his own use.  Defense counsel has no obligation to pay for a copy of plaintiff's

7    opposition or to provide plaintiff with copying services.  Accordingly, plaintiff's request for a

8    court order will be denied.

9                                            **CONCLUSION**

10                IT IS HEREBY ORDERED that:

11                1.  Plaintiff's July 18, 2008 motion for leave to file an amended complaint (Doc.

12   No. 54) is granted;

13                2.  Service of the complaint is appropriate for defendant Mohamed;

14                3.  The Clerk of the Court shall send plaintiff one USM-285 form, one summons,

15   an instruction sheet, and a copy of the amended complaint filed July 18, 2008;

16                4.  Within thirty days from the date of this order, plaintiff shall complete the

17   attached Notice of Submission of Documents and submit all of the following documents to the

18   court at the same time:

19                       a.  The completed, signed Notice of Submission of Documents;

20                       b.  One completed summons;

21                       c.  One completed USM-285 form for the defendant listed in number 2

22                       above; and

23                       d.  Two copies of the amended complaint filed July 18, 2008;

24                5.  Plaintiff shall not attempt to effect service of the complaint on the defendant or

25   request a waiver of service of summons from the defendant.  Upon receipt of the above-described

26   /////

1    documents, the court will direct the United States Marshal to serve the above-named defendant

2    pursuant to Federal Rule of Civil Procedure 4 without payment of costs; and

3            6.  Plaintiff's December 23, 2008 request for a court order (Doc. No. 67) is

4    denied.

5            IT IS HEREBY RECOMMENDED that defendants' June 27, 2008 motion for

6    summary judgment (Doc. No. 48) be granted in part and denied in part as follows:

7            1.  Defendants' motion for summary judgment on plaintiff's excessive force claim

8    against Brown and Madrigal be denied;

9            2.  Defendants' motion for summary judgment on plaintiff's inadequate medical

10   care claim against Brown and Madrigal be granted;

11           3.  Defendants' motion for summary judgment on plaintiff's retaliation claim

12   against Brown, Madrigal, and Kissinger be granted;

13           4.  Defendants' motion for summary judgment on plaintiff's free exercise claim

14   against Brewer and Kissinger be denied; and

15           5.  Defendants' motion for summary judgment with respect to their affirmative

16   defense of qualified immunity be denied.

17           These findings and recommendations will be submitted to the United States

18   District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

19   fifteen days after being served with these findings and recommendations, any party may file and

20   serve written objections with the court.  A document containing objections should be titled

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

22   shall be filed and served within ten days after service of the objections.  The parties are advised

23   that failure to file objections within the specified time may, under certain circumstances, waive

24   /////

25   /////

26   /////

1    the right to appeal the District Court's order.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

2    1991).

3    DATED: January 20, 2009.

4

5    _____

6    DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

7    DAD:9
     wash1994.57

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JESSE WASHINGTON,

11            Plaintiff,                 No. CIV S-06-1994 WBS DAD P

12       vs.

13   J. BROWN, et al.,                   NOTICE OF SUBMISSION

14            Defendant.                 OF DOCUMENTS

15   _____/

16            Plaintiff hereby submits the following documents in compliance with the court's

17   order filed _____:

18            _____ one completed summons form;

19            _____ one completed USM-285 form; and

20            _____ two true and exact copies of the complaint filed July 18, 2008.

21   DATED: _____.

22

23                                       _____

24                                       Plaintiff

25

26

                                          37