IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE WASHINGTON,

        Plaintiff,               No. CIV S-06-1994 WBS DAD P

   vs.

J. BROWN, et al.,

        Defendants.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action filed pursuant to 42 U.S.C. § 1983.  This matter is before the court on a motion for summary judgment brought on behalf of defendants Brewer, Kissinger, and Mohamed.  Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on a second amended complaint against defendants Brown, Madrigal, Brewer, Kissinger, and Mohamed.  Therein, he alleges as follows.  Prior to the start of Ramadan on October 15, 2004, plaintiff and several other inmates petitioned defendants Brewer and Kissinger to provide them with the sign-up sheet for Ramadan and asked these defendants to notify the prison kitchen staff that they intended to participate in the Ramadan fast.  (Sec. Am. Compl. (SAC) at 10-11.)  In addition, plaintiff sent several inmate requests to defendant

1

1   Mohamed, the assigned Muslim Imam Representative for the prison, informing him that plaintiff

2   and several other Muslim inmates intended to fast for Ramadan.  (Id. at 11.)  However, according

3   to plaintiff, defendants Brewer, Kissinger, and Mohamed intentionally failed to ensure that

4   plaintiff and his fellow Muslim inmates were placed on the Ramadan fast list and allowed to

5   participate in the religious observance.  (Id. at 12-13.)  Moreover, plaintiff alleges that defendants

6   Brewer and Mohamed denied him and other Muslim inmates the opportunity to make-up the

7   seventeen days of Ramadan fasting that they had missed.  (Id. at 13-14.)

8           Plaintiff also alleges that on December 19, 2004, defendants Brown and Madrigal

9   were distributing breakfast food trays in administrative segregation.  (Id. at 3.)  They told plaintiff

10   that they had spit in his food.  (Id. at 3B.)  When defendants Brown and Madrigal reappeared

11   thirty minutes later to retrieve the food trays and to issue sack lunches, plaintiff asked to see the

12   unit officer in charge.  (Id.)  The defendants ignored plaintiff's request and defendant Brown

13   snatched the food tray away from the food port.  (Id. at 4.)  Defendants Brown and Madrigal then

14   slammed plaintiff's right hand in the food port, causing him severe pain through his right hand,

15   arm, and back.  (Id.)  After freeing his hand, plaintiff felt sharp pains in his lower back and asked

16   the defendants to summon emergency medical staff to examine his hand.  (Id. at 4-5.)  The

17   defendants, however, ignored plaintiff's request.  (Id. at 5.)

18           Later, when defendants Brown and Madrigal returned to serve the evening meals,

19   they insinuated that they had contaminated plaintiff's food again.  (Id. at 7.)  In response, plaintiff

20   asked to see the officer in charge to complain about the alleged contamination of his food and to

21   seek emergency medical treatment for his hand.  (Id.)  Defendants Brown and Madrigal ignored

22   plaintiff's requests once again and instead attempted to provoke plaintiff into refusing to return

23   his meal tray.  (Id. at 8.)  Plaintiff contends that this was done so that the defendants could use

24   pepper spray to extract him from his cell for disobeying a direct order.  (Id.)

25           Plaintiff alleges that the contamination of his food by prison officials was not an

26   isolated event.  According to plaintiff, just two months earlier on October 3, 2004, defendant

2

1    Kissinger also tampered with plaintiff's food.  (Id. at 11.)  In response to that incident, plaintiff

2    initiated a five-day hunger strike to protest his treatment.  (Id.)

3            Based on the above allegations, plaintiff claims that defendants Brewer, Kissinger,

4    and Mohamed violated his rights under the Religious Land Use and Institutionalized Persons Act

5    ("RLUIPA") and the Free Exercise Clause of the First Amendment by intentionally denying him

6    the opportunity to participate in the Ramadan fast and by refusing to provide him with obligatory

7    make-up Ramadan food trays.  (Id. at 15-16.)  In addition, plaintiff claims that defendants Brown

8    and Madrigal violated his Eighth Amendment right to be free from the use of excessive force

9    when the two defendants slammed his hand in the food port.  (Id. at 15.)  Lastly, plaintiff claims

10   that defendant Kissinger violated his Eighth Amendment right to adequate medical care when he

11   contaminated plaintiff's food tray, thereby interfering with plaintiff's prescribed medical

12   treatment of taking Ibuprofen with food.[1]  (See id. at 5, 16.)

13           In terms of relief, plaintiff requests compensatory damages, punitive damages,

14   declaratory relief, and any other relief the court deems appropriate.  (Id. at 3.)

15                              **PROCEDURAL HISTORY**

16           On September 5, 2006, plaintiff filed his complaint and commenced this civil

17   rights action.  In due course, the court reviewed plaintiff's complaint, found that it appeared to

18   state cognizable claims against the defendants, and ordered service.  Discovery ensued, and on

19   June 27, 2008, defendants Brown, Madrigal, Brewer, and Kissinger filed a motion for summary

20   judgment.  On January 21, 2009, the court issued findings and recommendations, recommending

21   that: (1) defendants' motion for summary judgment on plaintiff's excessive force claim against

22   defendants Brown and Madrigal be denied; (2) defendants' motion for summary judgment on

23   plaintiff's inadequate medical care claim against defendants Brown and Madrigal be granted; (3)

24

25           [1] Plaintiff also claimed that defendants Brown, Madrigal, and Kissinger violated his First
     Amendment right to be free from retaliation and that defendants Brown and Madrigal violated
26   his Eighth Amendment right to adequate medical care.  However, as discussed infra, the court
     previously granted summary judgment in favor of defendants with respect to these claims.

defendants' motion for summary judgment on plaintiff's retaliation claim against defendants Brown, Madrigal, and Kissinger be granted; (4) defendants' motion for summary judgment on plaintiff's free exercise claim against defendants Brewer and Kissinger be denied; and (5) defendants' motion for summary judgment with respect to their affirmative defense of qualified immunity be denied.

On the same day, the court also granted plaintiff's motion to amend his complaint. Specifically, the court found that plaintiff's proposed second amended complaint appeared to state cognizable claims under the First Amendment and RLUIPA against Chaplain Mohamed, previously referred to as "John Doe" in plaintiff's original complaint. Furthermore, the court found that plaintiff's second amended complaint appeared to state cognizable RLUIPA claims against defendants Brewer and Kissinger.

On March 3, 2009, the assigned District Judge adopted the findings and recommendations in full. The undersigned then re-opened discovery for the limited purpose of plaintiff's new claims against defendant Mohamed under the First Amendment and RLUIPA, as well as plaintiff's claims against defendants Brewer and Kissinger under RLUIPA. The undersigned also granted the parties leave to file additional dispositive motions.

On September 16, 2009, defendants Brewer, Kissinger, and Mohamed filed the pending motion for summary judgment. Therein, defendants Brewer, Kissinger and Mohamed argue that the undisputed evidence in the case demonstrate that: (1) defendant Kissinger was not deliberately indifferent to plaintiff's medical needs; (2) defendants Brewer and Kissinger did not violate plaintiff's rights under the First Amendment or RLUIPA; (3) defendants Brewer and Kissinger are entitled to qualified immunity with respect to plaintiff's claims under the Eighth Amendment, First Amendment, and RLUIPA; and (4) defendant Mohamed is entitled to partial summary judgment in his favor with respect to plaintiff's claim for damages based upon the alleged First Amendment and RLUIPA violations.

/////

4

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

/////

**OTHER APPLICABLE LEGAL STANDARDS**

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  The Eighth Amendment and Inadequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

1   acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

2   Seiter, 501 U.S. 294, 298-99 (1991).

3          Where a prisoner's Eighth Amendment claims arise in the context of medical

4   care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

5   deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

6   Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and

7   the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059

8   (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th

9   Cir. 1997) (en banc).

10         A medical need is serious "if the failure to treat the prisoner's condition could

11   result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

12   McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

13   need include "the presence of a medical condition that significantly affects an individual's daily

14   activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

15   satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

16   Brennan, 511 U.S. 825, 834 (1994).

17         If a prisoner establishes the existence of a serious medical need, he must then

18   show that prison officials responded to the serious medical need with deliberate indifference.

19   Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

20   deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

21   which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

22   (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

23   to medical care, however, "the indifference to his medical needs must be substantial.  Mere

24   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

25   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

26   105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

8

1 negligence in diagnosing or treating a medical condition, without more, does not violate a

2 prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

3 indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

4 ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

5 (quoting Whitley, 475 U.S. at 319).

6        Delays in providing medical care may manifest deliberate indifference.  Estelle,

7 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

8 providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

9 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

10 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

11 Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

12 prisoner need not show his harm was substantial; however, such would provide additional

13 support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

14 v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

15        Finally, mere differences of opinion between a prisoner and prison medical staff

16 or between medical professionals as to the proper course of treatment for a medical condition do

17 not give rise to a § 1983 claim.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

18 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

19 F.2d 1337, 1344 (9th Cir. 1981).

20 III.  First Amendment Free Exercise

21        "[C]onvicted prisoners do not forfeit all constitutional protections by reason of

22 their conviction and confinement in prison."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).

23 However, a prisoner's First Amendment rights are "necessarily limited by the fact of

24 incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

25 maintain prison security."  McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).  In particular,

26 a prisoner's constitutional right to free exercise of religion must be balanced against the state's

1   right to limit First Amendment freedoms in order to attain valid penological objectives such as

2   rehabilitation of prisoners, deterrence of crime, and preservation of institutional security.  See

3   O'Lone v. Shabazz, 482 U.S. 342, 348 (1987); Pell v. Procunier, 417 U.S. 817, 822-23 (1974).

4   These competing interests are balanced by applying a "reasonableness test."  McElyea, 833 F.2d

5   at 197.  "When a prison regulation impinges on inmates' constitutional rights, the regulation is

6   valid if it is reasonably related to legitimate penological interests."  Id. (quoting Turner v. Safley,

7   482 U.S. 78 (1987)).

8           Several factors are relevant to a reasonableness determination: (1) whether the

9   regulation has a valid, rational connection to legitimate governmental interests invoked to justify

10   it; (2) whether there are alternative means of exercising the asserted constitutional right; (3) what

11   impact accommodation of the asserted right will have on correctional staff and other inmates, and

12   on the allocation of prison resources in general; and (4) whether there are ready alternatives to

13   the regulation or policy in question, the absence of which is evidence of the reasonableness of the

14   prison regulation.  Turner, 482 U.S. at 89-91.

15           Courts must, of course, accord deference to the decisions of prison administrators.

16   Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977).  "Nevertheless,

17   deference does not mean abdication."  Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990).

18   Prison officials are not entitled to summary judgment if they fail to provide evidence that the

19   interests they have asserted are the actual bases for the regulation or policy under attack.  Id. at

20   386.  Prison officials cannot rely on conclusory assertions to support their policies but must first

21   identify the specific penological interests involved and then make an evidentiary showing that

22   those specific interests are the actual bases for their policies and that the policies are reasonably

23   related to the furtherance of the identified interests.  Id.

24   IV.  RLUIPA

25           Under RLUIPA, the government is prohibited from imposing "a substantial

26   burden on the religious exercise of a person residing in or confined to an institution" unless the

government establishes that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)-(2).  In this regard, the plaintiff bears the initial burden of demonstrating that the institution's actions have placed a substantial burden on plaintiff's free exercise of religion.  Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  A "substantial burden" is one that imposes a "significantly great restriction or onus upon such exercise."  Id. at 995-96.  Put another way, the burden must be oppressive to a great extent, such that it renders religious exercise "effectively impracticable."  Sefeldeen v. Alameida, 238 Fed. Appx. 204, 205-06 (9th Cir. 2007) (holding that a vegetarian meal plan did not violate plaintiff's religious dietary requirements).[2]  Finally, for the purpose of RLUIPA, "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  The statute must be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted" by the Act and the Constitution.  42 U.S.C. § 2000cc-3(g).

V.  Qualified Immunity

        "Qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The defense of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. ___, ___, 129 S. Ct. 808, 815 (2009).

        Determining whether an official is entitled to qualified immunity requires a two-part analysis.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Tibbetts, 567 F.3d at 535; Ramirez v.

_____

[2]  Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

City of Buena Park, 560 F.3d 1012, 1020 (9th Cir. 2009).  First, a court must decide whether the facts alleged, when taken in the light most favorable to plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional right.  Id.  Second, the court must decide whether the statutory or constitutional right alleged by plaintiff was "clearly established."  Id.  A right is "clearly established" for the purpose of qualified immunity if "'it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).  Because qualified immunity is an affirmative defense, the initial burden of proof lies with the official asserting the defense.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

Although it is often beneficial to approach the two-part inquiry in the sequence prescribed above, it is not mandatory.  Pearson, 129 S. Ct. at 818.  A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id.; Ramirez, 560 F.3d at 1020.  A court may grant defendants qualified immunity and dismiss plaintiff's claim if at any point the court answers either prong in the negative.  See e.g., Tibbetts, 567 F.3d at 536-39 (bypassing the first prong and granting the defendants qualified immunity because the plaintiff's due process claim was not a "clearly established right" at the time of the alleged violation).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.  Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by defendants Brewer, Kissinger and Mohamed, and those of other prison officials.  It is also supported by citations to plaintiff's deposition transcript, copies of plaintiff's inmate appeals and prison records reflecting plaintiff's movement history.

/////

The evidence submitted by the three defendants establishes the following.  From October 3, 2004 through October 8, 2004, plaintiff was housed in the Administrative Segregation Unit ("ASU") at High Desert State Prison ("HDSP").  From September 2004 through October 2004, defendant Kissinger worked as a floor officer in the ASU and defendant Brewer worked as a correctional sergeant in the ASU.  (Defs.' SUDF 4-5, Exs. C-G.)

Inmates in the ASU are provided meals according to the following schedule.  In the morning, floor officers provide each inmate with a breakfast tray.  Approximately thirty minutes later, floor officers collect each inmate's breakfast trash and deliver the inmate a sack lunch.  In the evening, floor officers collect each inmate's lunch trash and deliver the inmate a dinner tray.  On October 3, 2004, defendant Kissinger served breakfast, lunch, and dinner trays to the inmates in the ASU.  Defendant Kissinger did not work from October 4, 2004 through October 8, 2004 because he was on vacation, and therefore he did not serve any meals to inmates in the ASU on those dates.  (Defs.' SUDF 6-8, Exs. C-D.)

From October 3, 2004 through October 8, 2004, plaintiff initiated a hunger protest because he believed that defendant Kissinger had contaminated his breakfast on October 3, 2004.  Whenever an inmate in the ASU refuses a meal, the floor officers who serve the meal are required to document the inmate's refusal on a CDC 114-D chrono.  They must also inform their supervisor.  In accordance with this procedure, on October 3, 2004, defendant Kissinger documented and informed his supervisor each timed plaintiff refused to eat.  Thereafter, correctional staff and medical personnel monitored plaintiff's health and encouraged him to eat.  Plaintiff's five-day abstention from eating did not result in any permanent or ongoing harm to his health.  Nor did it expose plaintiff to an increased risk of future harm.  (Defs.' SUDF 9, 11-14, Ex. C, Ex. G., Pl.'s Dep.)

On October 15, 2004, the Islamic Ramadan fast began.  Adherents of the religion observe Ramadan during daylight hours from sunrise to sundown for an entire lunar month.  In general, prison officials provide inmates in the ASU with their meals during daylight hours

13

1   between sunrise and sundown.  However, special arrangements are made to ensure that Islamic

2   inmates in the ASU receive food before sunrise and after sundown.  Special arrangements

3   include assuring that certain foods are provided during Ramadan and that each inmate receives a

4   dinner tray and sack lunch to consume before sunrise.  Islamic inmates who wished to participate

5   in the Ramadan fast in 2004 needed to submit a request for an interview with the Islamic

6   Chaplain before the start of Ramadan.  After interviewing the inmates, the Islamic Chaplain

7   generated a list of Ramadan fast participants and submitted it to the central kitchen, which was

8   responsible for preparing all of the  Ramadan meals.  (Defs.' SUDF 13-14, Exs. D, H, Pl.'s Dep.)

9            Sometime before the start of Ramadan, plaintiff asked defendants Kissinger and

10  Brewer how he could receive a special diet for the 2004 Ramadan fast.  They informed him that

11  he needed to submit a request for interview to the Islamic Chaplain.  Once the Islamic Chaplain

12  received plaintiff's request, the Chaplain was responsible for ensuring that plaintiff's name was

13  on the Ramadan fast list.  (Defs.' SUDF 20-22, Exs. C-D, I, Pl.'s Dep.)

14           On September 15, 2004, defendant Mohamed generated and submitted a list of

15  Ramadan fast participants to the warden.  It was later discovered that defendant Mohamed had

16  inadvertently omitted three inmates, including plaintiff, from the fast list.  Upon discovery of the

17  mistake, a correctional lieutenant promptly revised the list to include the previously omitted three

18  inmates.  Apart from the Chaplain, only correctional lieutenants and captains were authorized to

19  revise the Ramadan participation list.  Lower ranking correctional staff, including officers and

20  sergeants, were not authorized to revise the list.  (Defs.' SUDF 23-27, Exs. C-D, I-K.)

21           From November 2, 2004 until the conclusion of the Ramadan fast, plaintiff was

22  provided with appropriate meals, which allowed him to participate in the Ramadan fast.  (Defs.'

23  SUDF 28, Pl.'s Dep.)

24  II.  Defendants' Arguments

25           Defense counsel argues that the defendants are entitled to summary judgment on

26  plaintiff's Eighth Amendment claim against defendant Kissinger, as well as plaintiff's RLUIPA

14

1   and First Amendment claims against defendants Brewer and Kissinger.  In addition, defense

2   counsel argues that defendants Brewer and Kissinger are entitled to qualified immunity and that

3   defendant Mohamed is entitled to partial summary judgment in his favor with respect to

4   compensatory and punitive damages in connection with plaintiff's First Amendment and

5   RLUIPA claims.  (Defs.' Mem. of P. & A. at 1-2, 14-15.)

6   A.   Defendant Kissinger and Plaintiff's Eighth Amendment Claim

7   Defendant Kissinger argues that he is entitled to summary judgment on plaintiff's

8   Eighth Amendment inadequate medical care claim because plaintiff's medical needs were not

9   objectively serious.  In this regard, defendant Kissinger contends that even assuming he had

10   contaminated plaintiff's breakfast tray on October 3, 2004, he was not aware that plaintiff faced a

11   substantial risk of serious harm when plaintiff refused to eat the three meals that he offered him.

12   In addition, he argues, the undisputed facts in this case confirm that abstaining from food for one

13   day would not have placed plaintiff in substantial risk of serious harm.  (Defs.' Mem of P. & A.

14   at 7.)

15   Defendant Kissinger also contends that he took reasonable measures to abate any

16   risk of serious harm to plaintiff.  Defendant Kissinger stresses that each time plaintiff refused to

17   eat, he documented plaintiff's refusal and informed his supervisor of the situation.  Thereafter,

18   correctional and medical staff monitored plaintiff's health and encouraged him to eat.  Thus,

19   according to defendant Kissinger, plaintiff's refusal to eat for five-days did not result in any

20   permanent or ongoing harm to his health, nor did it expose him to an unreasonable risk of future

21   harm.  (Defs.' Mem of P. & A. at 7-8.)

22   Finally, defendant Kissinger argues that he did not cause plaintiff's hunger strike.

23   In this regard Kissinger contends that there is no evidence that he engaged in any affirmative act,

24   or failed to perform a legally required duty, which resulted in plaintiff's refusal to eat for five

25   days.  According to defendant Kissinger, after he allegedly contaminated plaintiff's breakfast tray

26   on October 3, 2004, he served plaintiff two other meals that day.  According to defendant

15

1   Kissinger, plaintiff refused to eat those meals not because they were contaminated but solely

2   because of the alleged contamination earlier that day.  Moreover, defendant Kissinger stresses

3   that he did not serve plaintiff meals from October 4, 2004 through October 8, 2004.  According

4   to defendant Kissinger, other correctional staff served plaintiff those meals, and there is no

5   evidence that they were contaminated.  In this regard, defendant Kissinger contends that plaintiff

6   could have eaten during this time, but he alone chose not to do so.  (Defs.' Mem. of P. & A. at 8-

7   10.)

8           B.  Defendants Brewer and Kissinger and Plaintiff's First Amendment and

9               RLUIPA Claims

10          Defendants Brewer and Kissinger contend that they are entitled to summary

11  judgment on plaintiff's First Amendment and RLUIPA claims against them because there is no

12  causal nexus between their actions and plaintiff's delayed participation in the Ramadan fast.

13  Specifically, the two defendants argue that there is no evidence that they engaged in any

14  affirmative act, or failed to perform a legally required duty, which resulted in plaintiff's delayed

15  participation in the 2004 Ramadan fast.  According to defendants Brewer and Kissinger, when

16  plaintiff asked to participate in the fast, they told him that he needed to submit a request for an

17  interview to the Islamic Chaplain.  The defendants explain further that as low-ranking

18  correctional officers, they were not required to do more because they were not authorized to

19  revise the Ramadan participation list.  Therefore, in their view, the only reason why plaintiff's

20  participation in the fast was delayed was because the Chaplain had inadvertently omitted his

21  name from the initial list.  Once the mistake was discovered, the list was promptly corrected and

22  he was able to participate in the remainder of the fast.  (Defs.' Mem. of P. & A. at 10-11.)

23          C.  Defendants Brewer and Kissinger and Qualified Immunity

24          Defendants Brewer and Kissinger also assert that they are entitled to qualified

25  immunity with respect to all of plaintiff's constitutional claims against them.  In this regard,

26  defendant Kissinger reiterates that he did not violate plaintiff's Eighth Amendment rights

16

1    because plaintiff's medical needs were not objectively serious and because he did not cause

2    plaintiff's five-day hunger strike.  Similarly,  defendants Brewer and Kissinger reassert that they

3    did not violate plaintiff's rights under the First Amendment or RLUIPA because they did not

4    cause plaintiff's delayed participation in the 2004 Ramadan fast.  Finally, defendants Brewer and

5    Kissinger argue that a reasonable person in their positions could have believed that all of their

6    conduct was lawful.  (Defs.' Mem. of P. & A. at 11-12.)

7                    D.  Defendant Mohamed and Plaintiff's Request for Damages

8                    Defense counsel argues that plaintiff may recover only on his First Amendment

9    and RLUIPA claims against defendant Mohamed and that his claims against defendants Brewer

10   and Kissinger fail as a matter of law.  Moreover, defense counsel argues that plaintiff is entitled

11   to nominal damages, at most, with respect to his claims against defendant Mohamed.

12   Specifically, defense counsel contends that plaintiff did not suffer any physical injury as a result

13   of his delayed participation in the 2004 Ramadan fast and therefore he cannot recover

14   compensatory damages.  In addition, defense counsel asserts that plaintiff may not be awarded

15   punitive damages because there is no evidence that defendant Mohamed's failure to include

16   plaintiff in the Ramadan fast list was not done in reckless disregard for plaintiff's rights or

17   carried out with an evil motive .  Accordingly, counsel argues, a jury could at most award

18   plaintiff only nominal damages (such as $1) in recognition that plaintiff's rights were violated.

19   (Defs.' Mem. of P. & A. at 13-14.)

20   III.  Plaintiff's Opposition

21                    Plaintiff's opposition to defendants' motion for summary judgment is supported

22   by a response to defendants' statement of undisputed facts, plaintiff's declaration signed under

23   penalty of perjury, declarations by other inmates in the ASU, and copies of defendants' responses

24   to plaintiff's discovery requests.

25                    In his opposition, plaintiff contends that defendant Kissinger violated his rights

26   under the Eighth Amendment by interfering with his ability to take his prescribed medication

                                                    17

with food.  Specifically, plaintiff argues that defendant Kissinger and another unit officer, C.

Husky, contaminated his breakfast food tray on October 3, 2004, and his breakfast, lunch, and

dinner food trays on October 4, 2004.  According to plaintiff, defendant Kissinger also prompted

six other prison officers to tamper with his food from October 4, 2004, through October 8, 2004.

Plaintiff asserts that defendant Kissinger knew that plaintiff was experiencing hunger pains, in

addition to rheumatoid arthritic pain, and that plaintiff needed to consume food with his

prescribed Motrin twice daily to avoid side affects from the medication.  Plaintiff acknowledges

Dr. Swingle's declaration in which he claims that a one-day abstention from Motrin would not

cause plaintiff any permanent or ongoing harm.  However, plaintiff notes that defendant

Kissinger's conduct caused him to abstain from eating three meals a day for five days, which in

turn caused him to suffer arthritic pains, headaches, "odd sensations," dizziness, extensive

hunger pains, and psychological and emotional stress.  (Pl.'s Mem. of P. & A. at 11-14, Pl.'s

Decl.)

          In addition, plaintiff argues that defendants Brewer, Kissinger, and Mohamed

violated his rights under RLUIPA by intentionally failing to ensure that his name was placed on

the Ramadan fast list in 2004 in a timely fashion, causing him to miss eighteen days of the

Ramadan fast.  According to plaintiff, he could send a request for interview to the Islamic

Chaplain through defendants Kissinger, Brewer, and other unit officers, and in this case, he

received assurance that his name would be on the Ramadan fast list.  Moreover, plaintiff

contends that every correctional staff member, including officers, sergeants, lieutenants, and

captains, were able to add to or revise the Ramadan fast participant list in 2004.  Plaintiff also

asserts that the defendants had a responsibility to ensure his name was on the list and have

acknowledged this responsibility to him.  (Pl.'s Mem. of P. & A. at 7-8.)

          Plaintiff also argues that the defendants are not entitled to qualified immunity.  As

discussed above, plaintiff contends that he has established that defendants' conduct violated his

rights under RLUIPA and the Eighth Amendment.  In addition, plaintiff contends that the law

18

under RLUIPA and the Eighth Amendment is clearly established.  In this regard, plaintiff notes that it has long been recognized that inmates must be allowed to observe Ramadan.  (Pl.'s Mem. of P. & A. at 18-20.)

Finally, plaintiff argues that, based on the evidence in this case, he my recover nominal, compensatory, and punitive damages for the violation of his rights under the First Amendment and RLUIPA.  (Pl.'s Mem. of P. & A. at 20-22.)

IV.  <u>Defendants' Reply</u>

In reply, defense counsel argues that plaintiff's opposition fails to raise a triable issue of fact.  Specifically, counsel acknowledges plaintiff's claim that defendant Kissinger's alleged contamination of his breakfast on October 3, 2004, forced plaintiff to abstain from taking his prescribed Motrin tablets, which in turn caused him hunger and arthritic pain.  However, counsel contends that a one-day abstention from eating and taking Motrin did not subject plaintiff to an objectively serious risk of harm or an unreasonable risk of future harm.  Moreover, counsel reiterates that the undisputed evidence establishes that defendant Kissinger was not even at work from October 4, 2004, through October 8, 2004 and, contrary to plaintiff's argument, there is no evidence that defendant Kissinger instructed or had any involvement in any other officer's alleged contamination of plaintiff's meals on those days.  (Defs.' Reply at 4.)

Counsel notes that plaintiff cites Department Operations Manual ("DOM") § 53057.7 and two memorandums from Sergeant Hubbard to the central kitchen in support of plaintiff's claim that defendants Kissinger and Brewer had the authority to add his name on the 2004 Ramadan fast list.  Counsel argues, however, that neither DOM § 53057.7 nor the two memorandums from Sergeant Hubbard state that low-ranking correctional staff can generate or revise the Ramadan fast list.  Rather, DOM § 53057.7 indicates that the Chaplain or Muslim Chaplain Clerk are authorized to generate such lists.  In addition, the memorandums from Sergeant Hubbard merely identify which inmates were participating in the 2004 Ramadan fast.  Sergeant Hubbard's memorandums were not revisions to the existing participant list.  (Defs.'

1  Reply at 2-3.)

2          Counsel also repeats the argument that defendants Brewer and Kissinger are

3  entitled to qualified immunity and did not violate plaintiff's rights under the Eighth Amendment,

4  First Amendment or RLUIPA.  Counsel also repeats that a reasonable person in the defendants'

5  positions would have believed that their conduct was lawful.[3]  (Defs.' Reply at 5.)

6          Finally, defense counsel reiterates that plaintiff is, at most, entitled to nominal

7  damages on his First Amendment and RLUIPA claims against defendant Mohamed.  Counsel

8  argues that although the Ninth Circuit has held that an inmate may recover nominal,

9  compensatory, and punitive damages, plaintiff in this case did not suffer any harm as a result of

10  his inability to participate in the beginning of the 2004 Ramadan fast and therefore cannot

11  recover compensatory damages.  In addition, counsel repeats his argument that because defendant

12  Mohamed's conduct did not involve an element of aggravation, plaintiff cannot recover punitive

13  damages.  (Defs.' Reply at 6.)

14                                    **ANALYSIS**

15  I.  Plaintiff's Inadequate Medical Care Claim

16          As explained above, an Eighth Amendment inadequate medical care claim is

17  comprised of both an objective and a subjective component.  See McGuckin, 974 F.2d at 1059.

18  The objective component is generally satisfied when the prisoner demonstrates that his medical

19  need is "serious" enough that the "failure to treat [his medical] condition could result in further

20  significant injury or the unnecessary and wanton infliction of pain."  Clement, 298 F.3d at 904

21  (citations omitted).  The subjective component of the claim is satisfied when the prisoner proves

22  that the defendant was "deliberately indifferent" to his serious medical needs.  Estelle, 429 U.S.

23

24          [3]  Defense counsel argues for the first time in defendants' reply that defendant Mohamed
   is entitled to qualified immunity.  The court will not entertain this belated argument because
25  plaintiff has not had a proper opportunity to respond.  See E.D. Cal. Local Rule 230 (m); see also
   Eberle v. City of Anaheim, 901 F.2d 814 (9th Cir. 1990) (as a general rule a party may not raise a
26  new issue for the first time in their reply brief).

                                        20

1   at 104-05.

2          Defendant Kissinger has presented evidence that plaintiff's five-day abstention

3   from eating did not expose plaintiff to a risk of future injury.  (See Defs.' Ex. G at 8.)  Moreover,

4   the evidence previously submitted to the court, when defendants apparently inadvertently failed

5   to move for summary judgment on behalf of defendant Kissinger with respect to this claim,

6   established that plaintiff's inability to take Motrin for a few days did not expose him to any

7   medical risk.  (Pl.'s Opp'n, Ex 10 at 2.)  Rather, according to Dr. Swingle, abstaining from

8   Motrin would perhaps cause one to experience an increased level of arthritic pain but that would

9   subside within hours or resuming the medication and would not result in any ongoing harm.  (Id.)

10  Plaintiff's evidence does not dispute this notion.  (Pl.'s Decl. at ¶¶ 11, 14, 18.)  The undisputed

11  evidence therefore establishes that plaintiff's alleged inability to take Motrin for five days did not

12  pose an objectively serious medical need on plaintiff's behalf.  See e.g., Doty v. County of

13  Lassen, 37 F.3d 540, 546 (9th Cir. 1994) (nausea, shakes, headache and depressed appetite do not

14  establish a serious medical need); Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991)

15  (plaintiff failed to refute evidence indicating that the cuts on two of his fingers did not present a

16  serious medical need).

17          Even if plaintiff had presented evidence that his condition presented a serious

18  medical need, resolution of the pending motion with regard to plaintiff's Eighth Amendment

19  inadequate medical care claim would hinge on the subjective component, i.e., whether defendant

20  Kissinger responded to plaintiff's need for food with "deliberate indifference."  See Farmer, 511

21  U.S. at 834; Estelle, 429 U.S. at 105.  In this regard, the court finds that defendant Kissinger has

22  carried his initial responsibility of demonstrating that there is no genuine issue of material fact

23  with respect to the adequacy of defendant's response to plaintiff's serious medical needs.  First,

24  defendant Kissinger declares that on October 3, 2004, he properly documented and informed his

25  supervisor each time plaintiff refused to eat.  (Defs.' Ex. C at ¶ 11.)  Thereafter, correctional and

26  medical staff monitored plaintiff's health at least three times a day and encouraged plaintiff to eat

every day.  (Defs.' Ex. G at ¶ 5.)  Second, defendant Kissinger declares that he did not work from

October 4, 2004 to October 8, 2004.  (Defs.' Ex. C at ¶ 9.)  Defendant Kissinger was thus unable

to serve plaintiff food during those days and similarly unable to interfere with plaintiff's ability to

eat or take his medication during that time.

Given this evidence, the burden shifts to plaintiff to establish the existence of a

genuine issue of material fact with respect to the adequacy of defendant Kissinger's response to

plaintiff's serious medical needs.  In his opposition to the pending motion, plaintiff concedes that

defendant Kissinger did not work at the prison from October 4 to October 7, 2004.  (See Pl.'s

Mem. of P. & A. at 12.)  Plaintiff nonetheless argues that defendant Kissinger "set into motion"

te series of events or convinced other prison officials to delay and interfere with plaintiff's ability

to eat while defendant Kissinger was absent from work.  (Id.)  Plaintiff has failed to provide any

evidence in support of this claim.  The record is devoid of any proof demonstrating that

defendant Kissinger told other prison staff to contaminate plaintiff's food or that other prison

officials actually tampered with plaintiff's food in any way.  Plaintiff has therefore failed to carry

his burden in opposing summary judgment.  See Marks v. United States, 578 F.2d 261, 263 (9th

Cir. 1978) ("Conclusory allegations unsupported by [facts] will not create a triable issue.").

Finally, even if the court were to credit plaintiff's bare allegation that defendant

Kissinger' actions, in effect, caused a delay in plaintiff's ability to eat and take his medication,

there is no evidence that such a delay ultimately caused plaintiff any lasting harm.  See Berry, 39

F.3d at 1057 (only delays in receiving medical treatment that cause substantial harm violate the

Eighth Amendment).  For example, plaintiff has not provided any evidence indicating that his

arthritic joint pains worsened as a result of his inability to take Motrin for five days.  Similarly,

there is no evidence before the court suggesting that plaintiff suffered any lasting harm from not

eating for five days.  Rather, the only evidence presented on this point is the declaration

submitted by defendants in which Dr. Lopez opines that a typical patient who abstained from

eating for five days would experience minor weight loss, cold sensations, and dizziness or

1   fainting.  (Defs.' Ex. G at ¶ 7.)  Such symptoms, however, would likely resolve within hours after

2   the patient resumed eating.  (Id.)

3          Accordingly, defendant Kissinger is entitled to summary judgment in his favor

4   with respect to plaintiff's Eighth Amendment inadequate medical care claim.

5   II.  Plaintiff's Free Exercise Claims

6          Defendants Brewer and Kissinger argue that there is no genuine issue of material

7   fact with respect to plaintiff's free exercise claims because the evidence in this case demonstrates

8   that they were not authorized to generate or revise the 2004 Ramadan fast list.

9          The court has already addressed this argument in its January 21, 2009 findings and

10   recommendations, which were adopted in full by the assigned District Judge on March 3, 2009.

11   Therein, the court concluded that defendants were not entitled to summary judgment on this

12   claim because a triable issue of material fact remained as to whether defendants, although unable

13   to alter the Ramadan fast list, nevertheless had the ability to ensure that an inmate participated in

14   the Ramadan fast.  (Findings and Recommendations filed Jan. 21, 2009 at 29-30) (citing

15   McDaniels v. Suss, No. C07-5221 RBL, 2008 WL 859859 at *8 (W.D. Wash. Mar. 28, 2008)

16   (issues of material fact precluding summary judgment on a free exercise claim found where it

17   was disputed whether plaintiff properly alerted chaplain that he wished to participate in Ramadan

18   and whether chaplain intentionally or negligently failed to place plaintiff's name on Ramadan

19   list)).  Because defendants have not presented any new evidence with respect to this issue, their

20   argument that there is no causal connection between their actions and plaintiff's delayed

21   participation in the Ramadan fast is precluded.[4]

22          Defendants Brewer and Kissinger are therefore not entitled to summary judgement

23   in their favor on plaintiff's free exercise of religion claim against them.

24   _____

25      [4]  Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993) (Under the "law of the case"
    doctrine, "a court is generally precluded from reconsidering an issue that has already been
26   decided by the same court, or a higher court in the identical case.")

1   III.  <u>Plaintiff's RLUIPA Claims</u>

2          Under RLUIPA, a plaintiff bears the initial burden of establishing that the alleged

3   actions have placed a substantial burden on his free exercise of religion.  <u>Warsoldier</u>, 418 F.3d at

4   994-95.  In this case, it is undisputed that plaintiff was not allowed to participate in the first

5   eighteen days of the 2004 Ramadan fast.  Nor do the parties dispute that fasting for Ramadan is a

6   tenet of plaintiff's religious beliefs.  Rather, defendants Brewer and Kissinger once again merely

7   contend that there is no causal connection between their actions and plaintiff's delayed

8   participation in the 2004 Ramadan fast.

9          The court finds that defendants Brewer and Kissinger have borne their initial

10   responsibility of demonstrating that there is no genuine issue of material fact regarding plaintiff's

11   RLUIPA claim.  The evidence before the court establishes that inmates who wished to participate

12   in the 2004 Ramadan fast were required to request an interview with the Islamic Chaplain before

13   the start of Ramadan and that the Chaplain was responsible for generating a list naming all the

14   participating inmates.  (Def.'s Ex. C at ¶ 15; Def.'s Ex. D at ¶¶ 11-12; Def.'s Ex. I at ¶ 3; Def.'s

15   Ex. K.)  Accordingly, when plaintiff asked defendants Brewer and Kissinger for the Ramadan

16   sign-up sheet, they informed him that he needed to submit a request for an interview with the

17   Islamic Chaplain.  (Def.'s Ex. C at ¶¶ 14-15; Def.'s Ex. D at ¶¶ 10-11.)  On September 15, 2004,

18   the Islamic Chaplain generated and submitted a list of Ramadan fast participants to the Warden.

19   (Def.'s Ex. I at ¶ 4.)  When it was discovered that the Ramadan participation list omitted three

20   inmates, including plaintiff, the list was revised.  (Def.'s Ex. K.)  Thereafter, from November 2,

21   2004 until the conclusion of Ramadan, plaintiff was allowed to fast.  (Def.'s Ex. B at 111:6-13.)

22          Given this evidence, the burden shifts to plaintiff to establish the existence of a

23   genuine issue of material fact with respect to the defendants' actions and his ability to participate

24   in the 2004 Ramadan fast.  In his opposition, plaintiff argues that in the past, he never signed-up

25   for Ramadan fasts through the Islamic Chaplain.  (Pl.'s Statement of Disputed Facts (SDF) at ¶

26   19.)  Rather, plaintiff declares that it was institutional custom that each housing unit floor staff

1  member generated a Ramadan sign-up list, which was later submitted to the Chaplain and to the

2  central kitchen food manager.  (Pl.'s Decl. at ¶ 25.)  Accordingly, plaintiff declares that he asked

3  defendants Brewer and Kissinger to provide him with the Ramadan sign-up sheet before the start

4  of the 2004 Ramadan fast.  (Id. at ¶ 22.)  In response, defendants Brewer and Kissinger assured

5  plaintiff that he would be placed on the fasting list.  (Id. at ¶ 23.)  Moreover, defendant Brewer

6  acknowledges that it was within his job responsibility "to provide each inmate, who is a member

7  of a religious program, with the religious services to which they are entitled."  (Pl.'s Ex. 3 at 7.)

8         Drawing all reasonable inferences from the facts before the court in plaintiff's

9  favor, the court finds that a triable issue of material fact remains as to whether defendants Brewer

10  and Kissinger had the ability to ensure that plaintiff was placed on the Ramadan participation list.

11  If they did, yet intentionally failed to do so, a reasonable jury could conclude that a causal nexus

12  exists between the defendants' actions and plaintiff's delayed participation in the 2004 Ramadan

13  fast.  Accordingly, the court concludes that defendant Brewer and Kissinger's are not entitled to

14  summary judgment on plaintiff's RLUIPA claims.

15  IV.  Qualified Immunity [5]

16         Qualified immunity protects government officials "from liability for civil damages

17  insofar as their conduct does not violate clearly established statutory or constitutional rights of

18  which a reasonable person would have known."  Pearson, 129 S. Ct. at 815 (quoting Harlow, 457

19  U.S. at 818.)  Here, for the reasons discussed above, defendants Brewer and Kissinger have not

20  carried their burden of demonstrating that they did not violate plaintiff's rights under RLUIPA.

21  Thus, the determination as to whether the defendants are entitled to qualified immunity hinges

22

23         [5]  As discussed above, the court has already determined that defendant Kissinger is
   entitled to summary judgment with respect to plaintiff's Eighth Amendment inadequate medical
24  care claim.  In addition, the court has previously determined in its January 21, 2009 findings and
   recommendations that defendants Brewer and Kissinger are not entitled to qualified immunity
25  with respect to plaintiff's First Amendment free exercise claims.  Accordingly, the court will
   only address defendant Brewer's and Kissinger's qualified immunity arguments with respect to
26  plaintiff's RLUIPA claims.

1    upon whether plaintiff's right to participate in Ramadan was "clearly established" under RLUIPA

2    in 2004.  See Clement, 298 F.3d at 905-06.

3            Before the decision in Warsoldier in 2005, "there exist[ed] little Ninth Circuit

4    authority construing RLUIPA."  Warsoldier, 418 F.3d at 997 n.7.  However, "specific binding

5    precedent is not required to show that a right is clearly established for purposes of the qualified

6    immunity analysis."  Maraziti v. First Interstate Bank, 953 F.2d 520, 525 (9th Cir. 1992) (quoting

7    Brady v. Gebbie, 859 F.2d 1543, 1557 (9th Cir. 1988)).  In the absence of binding precedent,

8    district courts should look to "decisions of state courts, other circuits, and district courts to

9    determine whether the right was clearly established."  Ward v. County of San Diego, 791 F.2d

10   1329, 1332 (9th Cir. 1985).

11           In Lovelace v. Lee, 472 F.3d 174 (4th Cir. 2006), a Virginia state prisoner alleged

12   that prison staff violated his rights under RLUIPA when they denied him special meals during

13   the 2002 Ramadan observance.  Id. at 181.  In determining whether the defendants were entitled

14   to qualified immunity on this claim, the Fourth Circuit looked to the "chronology and the origins

15   of RLUIPA."  Id. at 197.  In particular, the Fourth Circuit stressed that it was Congress' intent in

16   enacting RLUIPA that the statute "incorporate and exceed the [First Amendment's] basic

17   protections of religious exercise."  Id. at 198.  See also 42 U.S.C. § 2000cc-3(g) ("[RLUIPA]

18   shall be construed in favor of a broad protection of religious exercise, to the maximum extent

19   permitted by the terms of this Act and the Constitution.").  Thus, while "the outer boundaries of

20   RLUIPA may have been uncharted at the time" of its enactment, its "core protections," which

21   were rooted in the First Amendment, were not.  Lovelace, 472 F.3d at 198.  Accordingly, the

22   Fourth Circuit concluded that "[u]nder both the Free Exercise Clause and RLUIPA in its most

23   elemental form, a prisoner has a clearly established . . . right to a diet consistent with his . . .

24   religious scruples, **including proper food during Ramadan**."  Id. at 198-99 (quotations

25   omitted) (emphasis added).  The court therefore found that prison officials were not entitled to

26   qualified immunity with respect to the plaintiff's RLUIPA claims.  Id. at 199.

1       This court finds the reasoning and holding in <u>Lovelace</u> to be persuasive.  In the

2   Ninth Circuit, as in other circuits, it was clearly established by 2004 that "inmates have a [First

3   Amendment] right to be provided [with] food . . . that satisfies the dietary laws of their religion."

4   <u>McElyea v. Babbitt</u>, 833 F.2d 196, 198 (9th Cir. 1987) (citing <u>Kahane v. Carlson</u>, 527 F.2d 492,

5   495 (2d Cir. 1975).  Specifically, inmates had a clearly established right by 2004 under the First

6   Amendment to participate in and observe Ramadan.  <u>See</u> <u>e.g.</u>, <u>Washington v. Garcia</u>, 977 F.

7   Supp. 1067, 1074 (S.D. Cal. Sept. 1997) (denying defendants qualified immunity when they

8   deprived plaintiff without any legitimate penological purpose of a special diet during Ramadan in

9   1994); <u>Kifa Muhammad v. San Joaquin Cnty. Jail</u>, No. CIV S-02-0006 LKK CMK P, 2006 WL

10  1282944, at *8 (E.D. Cal. May 10, 2006) (finding that defendants were not entitled to qualified

11  immunity on plaintiff's First Amendment claims because plaintiff's right to special Ramadan

12  meals was clearly established in 2001).  These well-entrenched First Amendment protections

13  were "incorporated" by RLUIPA upon its enactment by Congress in 2000.  <u>Lovelace</u>, 472 F.3d at

14  198.  Thus, under the First Amendment and RLUIPA, a prisoner has a clearly established right

15  "to a diet consistent with his . . . religious scruples, including proper food during Ramadan."  <u>Id.</u>

16  at 198-99 (quotations omitted).

17      Accordingly, reasonable correctional officers the position of defendants Brewer

18  and Kissinger would have known that it was unlawful for them to deny plaintiff Ramadan meals

19  without a legitimate penological purpose.  <u>See</u> <u>Saucier</u>, 533 U.S. at 202.  The state of the law in

20  2004 gave the two defendants "fair warning" that their conduct was unconstitutional.  <u>Clement</u>,

21  298 F.3d at 906 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 740 (2002)).  Defendants Brewer and

22  Kissinger are therefore not entitled to summary judgment with respect to their affirmative

23  defense of qualified immunity.

24  V.  <u>Damages</u>

25      Defendant Mohamed argues that he is entitled to partial summary judgment with

26  respect to plaintiff's claim for damages with respect to his First Amendment and RLUIPA

27

1  claims.  Specifically, defendant Mohamed argues that plaintiff is not entitled to compensatory

2  damages because he did not suffer any physical injury.  In addition, defendant Mohamed asserts

3  that plaintiff is not entitled to recover punitive damages because defendant did not act with an

4  evil motive or with reckless disregard for plaintiff's rights.

5          A.  Compensatory Damages

6          Under 42 U.S.C. § 1997e(e), an inmate may not recover compensatory damages

7  for mental or emotion injuries suffered while in custody without a prior showing of physical

8  injury.  However, in Oliver v. Keller, 289 F.3d 623 (9th Cir. 2002), the Ninth Circuit held that to

9  the extent a plaintiff has actionable claims premised on constitutional violations, his claims are

10  not limited by § 1997e(e).  Accordingly, district courts in the Ninth Circuit have consistently

11  concluded that if a plaintiff states a constitutional claim, as opposed to one for mental or

12  emotional injuries, the physical injury requirement of § 1997e(e) does not bar the award of

13  compensatory damages.  See e.g., Cockcroft v. Kirkland, 548 F. Supp. 2d 767, 776-77 (N.D. Cal.

14  2008) ("§ 1997e(e) does not apply to claims for compensatory damages not premised on

15  emotional injury . . . [t]he fact that Cockcroft never suffered any physical injury as a result of

16  [defendant] Linfor's alleged acts may make his Eighth Amendment claim of very little financial

17  value but does not make the claim non-existent."); Low v. Stanton, No. CIV S-05-2211 MCE

18  DAD P, 2010 WL 234859, *4 (E.D. Cal. Jan. 14, 2010) (finding that plaintiff may recover

19  compensatory damages for the violation of his Fourteenth Amendment rights); Curtis v. Benda,

20  No. C08-5109FDB/KLS, 2009 WL 1065204 at *2 (W.D. Wash. April 20, 2009) (concluding that

21  plaintiff's Fourteenth Amendment claim for compensatory, nominal, and punitive damages are

22  not barred by § 1997e(e)); Davis v. Arpaio, No. CV 07-0424-PHX-DGC (MEA), 2008 WL

23  1840732, at *3 (D. Ariz. Apr. 23, 2008) ("Plaintiff does not bring any claims for mental or

24  emotional injuries; rather, he alleged violations of his constitutional rights and specifically sought

25  damages."); Hill v. Arpaio, No. CIV 04-1908-PHX-SRB, 2007 WL 1120305,*4 (D. Ariz. Apr.

26  11, 2007) ("[T]o the extent Plaintiff has actionable claims for compensatory and punitive

28

1  damages based on the violation of his Fourteenth Amendment rights, and not based on any

2  alleged mental or emotional injuries, his claims are not barred by 42 U.S.C. § 1997e(e).").

3          In this case, plaintiff alleges that defendant Mohamed violated his rights under

4  the First Amendment and RLUIPA when defendant Mohamed failed to include him in the 2004

5  Ramadan participation list.  Because plaintiff's claims are premised on constitutional violations,

6  he is not barred by § 1997e(e) and may recover compensatory damages without a showing of

7  physical injury.  See Canell v. Lighter, 143 F.3d 1210, 1213 (9th Cir. 1998) ("§ 1997e(e) does

8  not apply to First Amendment claims."); see also Greene v. Rourk, No. CIV S-04-0917 MCE

9  DAD P, 2009 WL 1759638, at *26-27 (E.D. Cal. June 22, 2009) ("[T]o the extent that plaintiff

10  seeks compensatory damages . . . for violations of RLUIPA [and the First Amendment] . . . those

11  claims are not barred by 42 U.S.C. § 1997e(e).")

12          B.  Punitive Damages

13          "Punitive damages may be awarded for conduct that is outrageous, because of the

14  defendant's evil motive **or his reckless indifference to the rights of others**."  Smith v. Wade,

15  461 U.S. 30, 46 (1983) (emphasis in original).  Here, plaintiff declares that prior to the Ramadan

16  fast in 2004, he sent defendant Mohamed "several CDCR-GA-22 inmate request forms" so that

17  he could participate in the religious observance.  (Pl.'s Decl. at ¶ 24.)  Plaintiff further declares

18  that defendant Mohamed repeatedly failed to respond to any of plaintiff's requests.  (Id.)  Given

19  this evidence, the court cannot conclude, that plaintiff will not be able to prove that defendant

20  Mohamed acted with some form of reckless indifference to his rights and is therefore precluded

21  from punitive damages.

22          Accordingly, defendants' motion for summary judgment with respect to damages

23  on plaintiff's free exercise and RLUIPA claims against defendant Mohamed should be denied.

24                                          **CONCLUSION**

25          IT IS HEREBY RECOMMENDED that defendants' September 16, 2009 motion

26  for summary judgment (Doc. No. 99) be granted in part and denied in part as follows:

1        1.  Defendants' motion for summary judgment on plaintiff's inadequate medical

2  care claim against defendant Kissinger be granted;

3        2.  Defendants' motion for summary judgment on plaintiff's free exercise and

4  RLUIPA claims against defendants Brewer and Kissinger be denied;

5        3.  Defendants' motion for summary judgment with respect to their affirmative

6  defense of qualified immunity be denied; and

7        4.  Defendants' motion for partial summary judgment with respect to damages on

8  plaintiff's free exercise and RLUIPA claims against defendant Mohamed be denied.

9        These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

11  one days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within seven days after service of the objections.  The parties are

15  advised that failure to file objections within the specified time may waive the right to appeal the

16  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  DATED: July 10, 2010.

18

19                      _____

20                      DALE A. DROZD
                         UNITED STATES MAGISTRATE JUDGE

21  DAD:sj
   wash1994.57(2)

22

23

24

25

26