IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE WASHINGTON,

    Plaintiff,                    No. 2:06-cv-1994 WBS DAD (PC)

    vs.

J. BROWN, et al.,

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. §1983. This matter is before the court on defendants' renewed motion for judgment on the pleadings.[1] Defendants seek judgment on the pleadings on plaintiff's claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) on the ground that money damages are unavailable under RLUIPA against defendants in either their official or their individual capacities.

/////

---

[1] Defendants originally filed a motion for judgment on the pleadings on October 11, 2010. By order filed August 29, 2011, that motion was denied without prejudice to its renewal within forty-five days. Order filed August 29, 2011 (Doc. No. 146), at 7. That order required defendants to address in any renewed motion the questions set forth by the court in the order. Id. at 7-8. Defendants timely filed their renewed motion on October 13, 2011.

The Federal Rules of Civil Procedure provide that, "[a]fter the pleadings are closed – but early enough not to delay the trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In considering a motion for judgment on the pleadings, the court reviews the pleadings only, and the allegations of the non-moving party are accepted as true.  Hal Roach Studios v. Richard Feiner, 883 F.2d 1429, 1436 (9th Cir. 1989).

Plaintiff is proceeding on claims raised in his second amended complaint, including the RLUIPA claims that are the subject of motion at bar.  The second amended complaint contains the following allegations relevant to the instant motion, which were previously set forth in this court's July 12, 2010 findings and recommendations on a motion for summary judgment filed by defendants Brewer, Kissinger, and Mohamed.

> Prior to the start of Ramadan on October 15, 2004, plaintiff and several other inmates petitioned defendants Brewer and Kissinger to provide them with the sign-up sheet for Ramadan and asked these defendants to notify the prison kitchen staff that they intended to participate in the Ramadan fast. (Sec. Am. Compl. (SAC) at 10-11.)  In addition, plaintiff sent several inmate requests to defendant Mohamed, the assigned Muslim Imam Representative for the prison, informing him that plaintiff and several other Muslim inmates intended to fast for Ramadan. (Id. at 11.)  However, according to plaintiff, defendants Brewer, Kissinger, and Mohamed intentionally failed to ensure that plaintiff and his fellow Muslim inmates were placed on the Ramadan fast list and allowed to participate in the religious observance. (Id. at 12-13.)  Moreover, plaintiff alleges that defendants Brewer and Mohamed denied him and other Muslim inmates the opportunity to make-up the seventeen days of Ramadan fasting that they had missed. (Id. at 13-14.)
>
> Plaintiff also alleges that on December 19, 2004, defendants Brown and Madrigal were distributing breakfast food trays in administrative segregation. (Id. at 3.)  They told plaintiff that they had spit in his food. (Id. at 3B.) . . . .
>
> Later, when defendants Brown and Madrigal returned to serve the evening meals, they insinuated that they had contaminated plaintiff's food again. (Id. at 7.) . . . .
>
> Plaintiff alleges that the contamination of his food by prison officials was not an isolated event.  According to plaintiff, just two months earlier on October 3, 2004, defendant Kissinger also tampered with plaintiff's food. (Id. at 11.)  In response to that

>     incident, plaintiff initiated a five-day hunger strike to protest his
>     treatment.  (Id.)
>
>     Based on the above allegations, plaintiff claims that defendants
>     Brewer, Kissinger, and Mohamed violated his rights under the
>     Religious Land Use and Institutionalized Persons Act ("RLUIPA")
>     and the Free Exercise Clause of the First Amendment by
>     intentionally denying him the opportunity to participate in the
>     Ramadan fast and by refusing to provide him with obligatory
>     make-up Ramadan food trays.  (Id. at 15-16.)

Findings and Recommendations filed July 12, 2010 (Doc. No. 119), at 1-3.  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief and any other relief the court deems appropriate.  SAC at 3.

As noted above, defendants seek judgment on the pleadings on plaintiff's RLUIPA claims on the ground that money damages are unavailable with respect to RLUIPA claims against defendants in either their individual or their official capacities.  The United States Supreme Court has recently held that money damages are unavailable for RLUIPA claims against defendants sued in their official capacity.  See Sossamon v. Texas, __ U.S. __, 131 S.Ct. 1651, 1663 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver.").  Thus, defendants are entitled to judgment on the pleadings on plaintiff's RLUIPA claims to the extent that plaintiff has sought an award of damages against them in their official capacities.

The question that remains is whether money damages are available to plaintiff with respect to his RLUIPA claims brought against defendants in their individual capacity.  The United States Supreme Court has not resolved that question and the United States Court of Appeals for the Ninth Circuit has expressly reserved the issue.  See Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 n.3 (9th Cir. 2011) ("Defendants do not challenge, and we do not decide, RLUIPA's application to private actors sued for damages in their individual capacity . . . .  The Ninth Circuit has not ruled on this issue in a precedential opinion,

and we reserve this question for another day.").[2]

Congress enacted RLUIPA "pursuant to its Spending Clause and Commerce Clause authority." Sossamon, 131 S.Ct. at 1656. Four circuit courts have held that RLUIPA does not authorize suits for damages against government officials in their individual capacities. See Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009); Sossamon v. Texas, 560 F.3d 316, 327-29 (5th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 886-89 (7th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1271-75 (11th Cir. 2007). The rationale of these courts is grounded in Congress' reliance on its authority under the Spending Clause to enact RLUIPA. See, e.g., Rendelman, 569 F.3d at 187-88. Relying on the decision in Pennhurst State School & Hospital v. Halderman, 451 U.S. 1 (1981), the Fourth Circuit in Rendelman held that RLUIPA does not contain "clear notice" that receipt of federal funds is conditioned on the availability of damages against individual state officials in their individual capacities. See Rendelman, 569 F.3d at 187-88. In Sossamon, the Fifth Circuit reasoned that, as a Spending Clause enactment, RLUIPA "operates like a contract, and individual RLUIPA defendants are not parties to the contract in their individual capacities." Sossamon, 560 F.3d at 328-29. In so reasoning, the Fifth Circuit in Sossamon agreed with the Eleventh Circuit's decision in Smith. See Nelson, 570 F.3d at 887-88. The Nelson court, in turn, found the reasoning of the Fifth and Eleventh Circuits to be persuasive, and concluded that "[c]onstruing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause." Nelson, 570 F.3d at 889.

Subsequently, several district courts, including district courts in the Ninth Circuit in general and in the Eastern District of California in particular, have followed the reasoning of

---

[2] Although it has been suggested that by affirming individual capacity defendants' entitlement to qualified immunity in unpublished decisions that the Ninth Circuit has implicitly assumed the existence of an RLUIPA damages claim against defendants in their individual capacity. See Nelson v. Miller, 570 F.3d 868, 887, n. 11 (7th Cir. 2009); Birdwell v. Cates, No. Civ. S-10-0719 KJM GGH P, 2012 WL 1641964, at *9 (E.D. Cal. May 9, 2012).

the Fourth, Fifth, Seventh and Eleventh Circuits in concluding that RLUIPA does not authorize suits for damages against government officials in their individual capacities.. See Kindred v. California Department of Mental Health, No. 1:08-cv-1321-AWI-GSA-PC, 2011 WL 2709104, at *8-9 (E.D. Cal. July 12, 2011) (and cases cited therein); Birdwell v. Cates, No. Civ. S-10-0719 KJM GGH P, 2012 WL 1641964, at *9 (E.D. Cal. May 9, 2012) (and cases cited therein).[3]

Other district courts, however, have held that RLUIPA does permit damages suits against state actors in their individual capacities. In fact, in 2007 the undersigned adopted that analysis, stating as follows:

> RLUIPA's provision authorizing a cause of action states: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C.A. § 2000cc-2(a). However, the Act defines "government" to include:
>
>> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>>
>> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (I); and
>>
>> (iii) any other person acting under color of State law....
>
> 42 U.S.C.A. § 2000cc-5(4)(A).
>
> As several courts have recognized in unpublished opinions, if Congress had not added subsection (iii), RLUIPA would only contemplate claims against officials in their official capacity. However, by including language that tracks that found in 42 U.S.C. § 1983, Congress appears to have intended RLUIPA to authorize claims against all persons amenable to suit under § 1983. See, e.g., Daker v. Ferrero, No. 1:03-CV-02481-RWS, 2006 WL 346440 at *9-10 (N.D.Ga. Feb.13, 2006); Agrawal v. Briley, No 02-C-6807, 2006 WL 3523750 at *9-13 (N.D.Ill.Dec.6, 2006) (and cases cited therein); see also Jama v. U.S. Immigration and Naturalization Serv., 343 F.Supp.2d 338, 374 (D.N.J.2004) (interpreting

---

[3] Magistrate Judge Austin later set aside another aspect of those findings and recommendations which have no impact on the consideration of the issue before this court. See Kindred v. California Department of Mental Health, No. 1:08-cv-1321-AWI-GSA-PC, 2011 WL 4761836 (E.D. Cal. Sept. 29, 2011).

RLUIPA's predecessor statute, RFRA). RLUIPA provides that claimants may obtain "appropriate relief." Although the provision does not expressly state that monetary damages are available, it also does not preclude them. Accordingly, this court concludes that plaintiff may proceed on his RLUIPA claims for monetary damages against defendants in their individual capacities.

Bess v. Alameida, No. Civ. S-03-2498 GEB DAD P, 2007 WL 2481682, *at 21 (Aug. 29, 2007).[4]

The question of whether money damages are available to plaintiff with respect to his RLUIPA claims brought against defendants in their individual capacity which is once again before the court is one of statutory interpretation.

> " '[T]he starting point for interpreting a statute is the language of the statute itself.' " Hallstrom v. Tillamook County, 493 U.S. 20, 25, 110 S. Ct. 304, 107 L. Ed.2d 237 (1989) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct. 2051, 64 L. Ed.2d 766 (1980)). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." Reves v. Ernst & Young, 507 U.S. 170, 177, 113 S. Ct. 1163, 122 L. Ed.2d 525 (1993) (citations and internal quotation marks omitted). Where the language is not dispositive, we look to the congressional intent "revealed in the history and purposes of the statutory scheme." Adams Fruit Co. v. Barrett, 494 U.S. 638, 642, 110 S. Ct. 1384, 108 L. Ed.2d 585 (1990).

United States v. Buckland, 289 F.3d 558, 564-65 (9th Cir. 2002).

RLUIPA provides in relevant part:

(a) General rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

---

[4] Two of the district court decisions cited by the undersigned in Bess were issued by district courts within the Seventh and Eleventh Circuits and those district courts could no longer reach the same conclusion today in light of the subsequent decisions in Nelson v. Miller, 570 F.3d 868 (7th Cir. 2009) and Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007).

    (1) is in furtherance of a compelling governmental interest; and

    (2) is the least restrictive means of furthering that compelling governmental interest.

 (b)  Scope of application

 This section applies in any case which--

    (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

    (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc-1.  The statute creates a cause of action as follows:

 A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.  Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.

42 U.S.C. § 2000cc-2.  Under the statute the term "government" in relevant part

 (A) means--

    (i) a State, county, municipality, or other governmental entity created under the authority of a State;

    (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (I); and

    (iii) any other person acting under color of State law;

    ....

42 U.S.C. § 2000cc-5.

 The statute itself does not expressly define "appropriate relief" as used in 42 U.S.C. § 2000cc-2.  However, because "RLUIPA both uses the 'appropriate relief' language and speaks without any 'clear direction' excluding damages relief," the phrase "appropriate relief"

7

includes the possibility of money damages.  See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma, 651 F.3d 1163, 1168-69 (9th Cir. 2011) (holding that municipalities "may be liable for money damages under RLUIPA, if plaintiffs prove a violation and damages.").

As noted above, a person may bring a claim for "appropriate relief" against "any . . . person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A)(iii).  The phrase "acting under color of State law" has specific jurisprudential meaning dating back at least sixty years.  In United States v. Classic, 313 U.S. 299 (1941), the United States Supreme Court held that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classis, 313 U.S. at 326.  Twenty years later, in Monroe v. Pape, 365 U.S. 167 (1961), overruled on other grounds by Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), the United States Supreme Court surveyed subsequent Congressional enactments, particularly civil rights statutes, containing the phrase, as well as its precedent, and concluded that the meaning given to the phrase "under color of State law" in the Classic decision endured.  Monroe, 365 U.S. at 184-87.  In particular, in Monroe, the Court held that the phrase "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory" in 42 U.S.C. § 1983 carried the meaning given the phrase "under color of State law" in Classic and subsequent decisions. 365 U.S. at 185.  The phrase "under color of state law" as used in 42 U.S.C. § 1983 applies equally to RLUIPA.  See Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011) ("[O]ur inquiry to determine whether a defendant acted 'under color of state law' is the same under RLUIPA as it is under § 1983.")

However, the United States Supreme Court has several times explained the difference between a suit against a government official in an official capacity, and a suit against a government official in an individual capacity.  Specifically, the Supreme Court has explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 237-238, 94 S. Ct.

> 1683, 1686-1687, 40 L. Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed.2d 611 1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Brandon, supra, 469 U.S., at 471-472, 105 S. Ct., at 878. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

A few years after the decision in Graham the Supreme Court reiterated this distinction as follows:

> Suits against state officials in their official capacity . . . should be treated as suits against the State. [Kentucky v. Graham], 473 U.S., at 166, 105 S. Ct., at 3105. . . . Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, supra, at 166, 105 S. Ct., at 3105 (quoting Monell, supra, 436 U.S., at 694, 98 S. Ct., at 2037). For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. 473 U.S., at 167, 105 S. Ct., at 3105.
>
> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id., at 166, 105 S. Ct., at 3105.

Hafer v. Melo, 502 U.S. 21, 25 (1991).

From the foregoing decisions, it would appear that by including "any other person acting under color of State law" in RLUIPA's definition of "government," Congress expressed its intention to include suits against state officials in their individual capacities in the remedial provisions of RLUIPA. Sections (i) and (ii) of the statutory definition of government include

both the state and state officials in their official capacity.  See 42 U.S.C. § 2000cc-5(A)(I), (ii). Section (iii) is therefore redundant unless it is a reference to individual capacity suits.

In fact, at least three of the circuit courts that have held that RLUIPA does not authorize suits for damages against government officials in their individuals capacities have nonetheless acknowledged that the plain language of RLUIPA seems to contemplate the creation of a cause of action for damages against defendants in their individual capacities.  See Nelson, 570 F.3d at 886 ("But even if the language of the statute contemplates individual capacity liability, we must still address the question of whether a statute enacted pursuant to the Spending Clause should be interpreted as imposing individual liability on persons who do not, themselves,, receive federal funds."); Sossamon, 560 F.3d at 328; Smith, 502 F.3d at 1272.  However, as noted above, all three of those circuit courts have concluded that the Spending Clause[5] does not authorize creation of damages remedies against state actors in their individual capacities.  See Nelson, 570 F.3d at 889 ("Construing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause.  Thus, as a matter of statutory interpretation, and to avoid the constitutional concerns that an alternate reading would entail, we decline to read RLUIPA as allowing damages against defendants in their individual capacity."); Sossamon, 560 F.3d at 329 ("To decide otherwise would create liability on the basis of a law never enacted by a sovereign with the power to affect the individual rights at issue.  For this reason, as a matter of statutory interpretation and to avoid the constitutional concerns that an alternative reading would entail, we decline to read Congress's permission to seek 'appropriate relief against a government' as permitting suits against RLUIPA defendants in their individual capacities."); Smith, 502 F.3d at 1275 ("We agree that a construction of RLUIPA providing for individual liability raises substantial constitutional concerns. Consequently, we conclude that section 3 of RLUIPA — a

---

[5] The Spending Clause together with the Commerce Clause was invoked by Congress as authorizing the enactment of RLUIPA.  See Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

provision that derives from Congress' Spending Power — cannot be construed as creating a private action against individual defendants for monetary damages.") The undersigned now agrees with this reasoning which represents the weight of authority on the issue at this time

Nonetheless, "Congress is not required to identify the precise source of its authority when it enacts legislation.  It is the duty of Congress to promulgate legislation, and it is the function of the courts to determine whether Congress has acted within the bounds of federal power." State of Nevada v. Skinner, 884 F.2d 445, 449 n.8 (9th Cir. 1989).  Thus, the final questions posed by the pending motion are whether Congress had any authority to create an individual capacity damages remedy in RLUIPA and, if so, whether that remedy is available to plaintiff.

In another context, the Ninth Circuit has held that "Congress constitutionally enacted RLUIPA pursuant to its enforcement power within Section Five of the Fourteenth Amendment." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 995 (9th Cir. 2006) (upholding challenge under RLUIPA to the denial of conditional use permit to build a Sikh temple on land zoned for agriculture).[6]  In upholding RLUIPA as a valid exercise of Congress' power to enforce the Fourteenth Amendment, however, the court also found that RLUIPA applies more narrowly than its predecessor, the Religious Freedom and Restoration Act (RFRA) and "is a congruent and proportional response to free exercise violations *because it targets only regulations* that are susceptible, and have been shown, to violate individuals' religious exercise." Id. at 994-95 (emphasis added).

Here, plaintiff's RLUIPA claim arises from the alleged failure of defendants Brewer, Kissinger, and Mohamed to place plaintiff on a fast list for Ramadan in 2004 and the alleged failure of defendants Brewer and Mohamed to allow him the opportunity to make up seventeen days of fasting that he missed.  According to the undisputed facts already found by this

---

[6] While Guru Nanak was a land use case, the Ninth Circuit included the provisions of RLUIPA applicable to prisons in its analysis.  456 F.3d at 993-95.

court on summary judgment, there were procedures available at plaintiff's institution of confinement for inmates to participate in the 2004 Ramadan fast.  See Findings and Recommendations filed July 12, 2010 (Doc. No. 119), at 24-25.  While there is a dispute over what those procedures were, both parties have presented this court with evidence of procedures intended to allow Muslim inmates to fast during Ramadan.  Id.  Thus, this case is entirely distinguishable from the premise on which Guru Nanak relied to uphold RLUIPA as valid under Congress' Section Five enforcement power.  Specifically, the court in Guru Nanak noted that

> laws "len[ding themselves] to *individualized* governmental assessment of the reasons for the relevant conduct," [Employment Div., Dept. of Human Resources of Oregon v. Smith,] 494 U.S. [872] at 884, 110 S. Ct. 1595 [(1990)] (emphasis added), are subject to higher scrutiny because they may be unevenly applied against actions premised on religious exercise, see id. ("[A] distinctive feature of unemployment compensation programs is that their eligibility criteria invite consideration of the particular circumstances behind an applicant's unemployment.").  When such regulations involving individualized assessments impose substantial burdens on religious exercise, they are subject to strict scrutiny to protect and vindicate the right to free exercise of religion from governmental encroachment.  See id.

Guru Nanak, at 993.  In this case there is no allegation or evidence of an uneven application of prison regulations that involved any individualized assessments to substantially burden plaintiff's religious exercise.

        For the reasons set forth above, this court finds as follows.  The plain language of RLUIPA appears to contemplate the creation of a damages remedy against state actors in their individual capacities.  Second, however, Congress' Spending Clause power does not provide it with authority to enact a private right of action with a monetary damages remedy against individual defendants who are not recipients of federal funds.  Third, even if the damages remedy against state actors in their individual capacities might be upheld under Congress' power to enforce the Fourteenth Amendment, the rationale on which that authority is premised has no application to the allegations or facts presented by this case.

/////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' October 13, 2011 renewed motion for judgment on the pleadings (Doc. No. 147) be granted as to plaintiff's RLUIPA claims for money damages; and

2. Plaintiff's RLUIPA claims be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 23, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
wash1994.mjop2