UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JESSEE WASHINGTON,

        Plaintiff,

  v.

J. BROWN, W. BREWER, Z. MADRIGAL, T. KISSINGER, S. MOHAMED,

        Defendants.
_____/

NO. CIV. 2:06-1994 WBS DAD PC

ORDER RE: FINDINGS AND RECOMENDATIONS

----oo0oo----

        Plaintiff Jessee Washington, a prisoner proceeding pro se, brought this civil rights action based on various alleged violations of his First and Eighth Amendment rights. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local General Order No. 262, and Local Rule 302(c)(17). Defendants filed a renewed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal of plaintiff's claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

1

1          In his Findings and Recommendations, Magistrate Judge
2 Drozd recommends that defendants' motion for judgment on the
3 pleadings be granted because "money damages are unavailable under
4 RLUIPA against defendants in either their official or their
5 individual capacities." (Docket No. 162 at 1:19-21.) Plaintiff
6 filed timely objections to the Findings and Recommendations, and
7 the court now reviews them de novo. 28 U.S.C. § 636(b)(1)(c);
8 Fed. R. Civ. P. 72(b)(2)-(3).

9          While the Supreme Court recently held that the Eleventh
10 Amendment precludes an award of damages under RLUIPA against a
11 state officer in his official capacity, Sossamon v. Texas, ---
12 U.S. ----, 131 S.Ct. 1651, 1663 (2011), neither the Supreme Court
13 nor the Ninth Circuit has determined whether damages are
14 available under RLUIPA against an officer in his individual
15 capacity. The court agrees with Magistrate Judge Drozd's
16 recommendation that, even though the plain language of RLUIPA
17 appears to create a damages remedy against individual officers,
18 such a remedy cannot stand in this case.

19          Most courts have assessed Congress's power to enact
20 RLUIPA as stemming from its spending power. See generally Nelson
21 v. Miller, 570 F.3d 868, 886 (7th Cir. 2009). "[L]egislation
22 enacted pursuant to the spending power is much in the nature of a
23 contract: in return for federal funds, the States agree to comply
24 with federally imposed conditions." Pennhurst State Sch. & Hosp.
25 v. Halderman, 451 U.S. 1, 17 (1981). Because individual officers
26 are not the recipients of the federal funds, the Fifth Circuit
27 has held that "Congressional enactments pursuant to the Spending
28 Clause do not themselves impose direct liability on a non-party

2

to the contract between the state and the federal government." Sossamon, 560 F.3d at 327-89.

The Fourth, Seventh, and Eleventh Circuits and numerous district courts have reached the same conclusion. Nelson, 570 F.3d at 889; Rendelman v. Rouse, 569 F.3d 182, 184 (4th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1275 (11th Cir. 2007), abrogated on other grounds by Sossamon, 131 S.Ct. 1651; Kindred v. Cal. Dep't of Mental Health, Civ. No. 1:08-01321 AWI GSA, 2011 WL 2709104, at *9 (E.D. Cal. July 12, 2011) (citing cases). As courts have repeatedly held when faced with similar claims, plaintiff's claims against the individual officers in this case cannot derive from Congress's spending power because the officers were not recipients of the federal funds.

Congress also enacted RLUIPA pursuant to its powers under the Interstate Commerce Clause. See 42 U.S.C. § 2000cc-1(b)(2) ("This section applies in any case in which . . . (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes."). The Supreme Court has not addressed whether Congress had the power to enact RLUIPA under the Commerce Clause. See Cutter v. Wilkinson, 544 U.S. 709, 727 n.2 (2005) ("[T]hough RLUIPA is entirely consonant with the Establishment Clause, it may well exceed Congress's authority under either the Spending Clause or the Commerce Clause. . . . The Court, however, properly declines to reach those issues, since they are outside the question presented and were not addressed by the Court of Appeals.") (Thomas, J., concurring).

Most circuit courts have either declined to address the

validity of RLUIPA under the Commerce Clause or found that the claim at issue did not implicate interstate commerce. See, e.g., Nelson, 570 F.3d at 886 (citing cases); Smith, 502 F.3d at 1274 n.9 ("Like the other courts that have addressed this statutory provision, we agree that it hinges on Congress's Spending Power, rather than its Commerce Clause Power."); Mayweathers v. Newland, 314 F.3d 1062, 1068 n.2 (9th Cir. 2002) (declining to "decide whether Congress also had the authority to pass RLUIPA under the Commerce Clause" after concluding that Congress had the authority to enact the statute under the Spending Clause).

In Nelson, 570 F.3d 868, a prisoner brought RLUIPA claims based on the alleged denial of meals that he requested because of his religious practice, which are similar to the claims plaintiff brings in this case. The Seventh Circuit concluded that the plaintiff's claims did not come within the Commerce Clause:

> Although RLUIPA ostensibly includes Commerce Clause underpinnings as well, there is no evidence in this case that Miller's denial of a religious diet "affect[ed] . . . commerce with foreign nations, among the several States, or with Indian tribes." Thus, it strikes us as appropriate, at least in this case, to interpret RLUIPA as an exercise of Congress's power under the Spending Clause.

Nelson, 570 F.3d at 886. The Fourth Circuit and numerous district courts have also concluded that RLUIPA claims based on a denial of the plaintiff's religious diet do not implicate the Commerce Clause. Rendelman, 569 F.3d at 189 (denial of kosher diet); Halloum v. Ryan, Civ. No. 11-0097, 2011 WL 4571683, at *5 (D. Ariz. Oct. 4, 2011) (failure to accommodate fasting during Ramadan); Patterson v. Ryan, Civ. No. 05-1159, 2011 WL 3799099,

4

at *6 (D. Ariz. Aug. 26, 2011) (denial of a three meal a day kosher diet); Mahone v. Pierce Cnty., Civ. No. 10-58472011, 2011 WL 3298898, at *5 (W.D. Wash. May 23, 2011), (denial of Jewish kosher diet), adopted in full by 2011 WL 3298528 (W.D. Wash. Aug. 1, 2011); Sokolsky v. Voss, Civ. No. 1:07-00594 SMM, 2010 2991522, at *4 n.4 (E.D. Cal. July 28, 2010) (denial of Passover diet); Harris v. Schriro, 652 F. Supp. 2d 1024, 1030 (D. Ariz, 2009) (denial of Jewish kosher diet); see also Sossamon, 560 F.3d at 329 n.34 ("In light of the Supreme Court's rationale for striking down the prior incarnation of RLUIPA as applied to the states, . . . we agree with the Eleventh Circuit's conclusion (and the implicit conclusion of the other circuits by their uniform choice to select the Spending Clause as the most natural source of congressional authority to pass RLUIPA) [that the Commerce Clause cannot sustain RLUIPA claims] when there is no evidence concerning the effect of the substantial burden on 'commerce with foreign nations, among the several States, or with Indian tribes.'").

     Based on these cases and the lack of any allegations in plaintiff's Second Amended Complaint suggesting that the denial of his religious diet would lead in the aggregate to a substantial effect on interstate commerce, the court concludes that plaintiff's claims do not come within the Commerce Clause underpinnings of RLUIPA.

     Lastly, Congress's power to create a RLUIPA claim enabling plaintiff to seek damages against the individual officers does not stem from § 5 of the Fourteenth Amendment in this case.  "RLUIPA is Congress's second attempt to accord

5

heightened statutory protection to religious exercise in the wake of this Court's decision in Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990)." Sossamon, 131 S.Ct. at 1655-56; see City of Boerne v. Flores, 521 U.S. 507, 514 (1997) (explaining that Smith, 494 U.S. 872, held that "neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest").

Congress's first attempt came in RLUIPA's predecessor, the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb et seq., which Congress purported to enact under § 5 of the Fourteenth Amendment. City of Boerne, 521 U.S. at 514. Although RLUIPA is more limited in scope than RFRA, both acts sought to restore the compelling interest test to free exercise claims and thereby prohibit a substantial burden on a person's free exercise of religion unless the government demonstrates that the burden is in furtherance of a compelling interest and employs the least restrictive means. See Sossamon, 131 S.Ct. at 1656; City of Boerne, 521 U.S. at 515-16.

In City of Boerne, the Supreme Court held that Congress lacked the power under § 5 of the Fourteenth Amendment to enact RFRA. City of Boerne, 521 U.S. at 515. The Court explained that § 5 gives Congress "the power 'to enforce,' not the power to determine what constitutes a constitutional violation," and that RFRA exceeded that power because it "attempt[ed] a substantive change in constitutional protections." Id. at 519, 532; see id. at 519 ("Legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause.

6

Congress does not enforce a constitutional right by changing what the right is."). City of Boerne thus not only prompted Congress to enact RLUIPA as it relates to inmates under only its Spending and Commerce Clause powers,[1] it also precluded Congress from utilizing § 5 of the Fourteenth Amendment to impose the compelling interest test to laws of general applicability. Section 5 therefore cannot sustain plaintiff's RLUIPA claims in this case.

IT IS THEREFORE ORDERED that (1) the Magistrate Judge's Findings and Recommendations of August 23, 2012, be, and the same hereby are, adopted to the extent they are consistent with this Order; (2) defendants' motion for judgment on the pleadings on plaintiff's claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPPA") be, and the same hereby

///
///
///

---

[1] With claims pertaining to land use regulations, Congress purported to act under the Spending Clause, Commerce Clause, and § 5 of the Fourteenth Amendment. See 42 U.S.C. § 2000cc(2)(A)-(C); see generally Life Teen Inc. v. Yavapai Cnty., Civ. No. 3:01-1490, 2003 WL 24224618, at *13-14 (D. Ariz. Mar. 26, 2003). In contrast, RLUIPA links claims by institutionalized persons only to the Spending and Commerce Clauses. See 42 U.S.C. § 2000cc-1(b)(1)-(2).
   Even assuming § 5 of the Fourteenth Amendment could be used to justify RLUIPA claims by inmates that attack laws or regulations providing for individualized assessments, plaintiff's RLUIPA claims attack a general policy that was applied to all Muslims in his unit. (See Second Am. Compl. ¶¶ 21-25, 2-30 (alleging that defendants failed "to assure that Facility 'Z' (Ad-Seg) Housing Unit Muslim Inmates were provided with Institutional unit (Inmate Sign-Up List) For Ramadhan Fast . . . Plaintiff, Inmate Brown And other Muslim Inmates were Intentionally Denied Ramadhan Fast").)

1 | is, GRANTED; and (3) plaintiff's RLUIPA claims be, and the same
2 | hereby are, DISMISSED.
3 | DATED:  October 5, 2012

```
                    WILLIAM B. SHUBB
                    UNITED STATES DISTRICT JUDGE
```